**AUTOMATIC WASHER CO. v. UNITED STATES.***
No. 42525.

Court of Claims.
June 1, 1936.

*Writ of certiorari granted 57 S. Ct. 46, 81 L. Ed. —.

Jesse I. Miller, of Washington, D. C., for plaintiff.

J. W. Blalock, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff, a Delaware corporation, sues to recover the amount of stamp taxes, interest, and penalty alleged to have been exacted by the Commissioner of Internal Revenue without warrant of law. The facts have been stipulated and no jurisdictional issue is involved.

The plaintiff is a successor corporation of the Automatic Electric Washer Company,

incorporated under the laws of Iowa, and the controversy to be adjudicated revolves around a reorganization of the Iowa company. In this opinion, following the findings, we will designate the Iowa corporation as the "old company" and the plaintiff as the "new company."

Harry E. Nelson, a substantial stockholder in the old company preliminary to the reorganization of the same on June 22, 1928, granted in a written agreement an option to Folds, Buck & Co., hereafter known as the "bankers," to purchase 40,000 shares of the convertible preferred and 40,000 shares of the common stock of the new company when the same was incorporated.

Nelson's reorganization plan comprehended the purchase by the new company of all the assets of the old one. The sale was to be accomplished by the issuance by the new company of 40,000 shares of convertible preferred and 180,000 shares of common stock to be, less 40,000 shares of common reserved as Treasury stock, distributed among the stockholders of the old company as their stock interest in the old company appeared.

The new company was duly incorporated and subsequent thereto, i. e., on September 27, 1928, by the terms of an express agreement, carried out Nelson's original plan of reorganization as evidenced by the agreement of June 22, 1928, except in determining the pro rata contribution by the stockholders of the old company to the stock to be sold to the bankers, the amount of the preferred to be sold was reduced to 34,-538 shares.

The agreement of September 27, 1928, contained a provision whereby H. E. Nelson and W. N. Gallagher, or either one of them, acting under duly executed powers of attorney from the stockholders of the old company, should receive from the new one certificates of stock therein in accord with the powers of attorney, to the extent of 34,538 shares of convertible preferred and 40,000 shares of common, which in turn were to be sold and transferred to the bankers for the sum of $868,912 and the proceeds distributed by Nelson among the stockholders of the old company for whom he was acting as attorney in fact as their interest therein appeared. In other words, the September agreement ratified the one of June 22, 1928, with additional provisions essential to complete the reorganization.

The findings disclose the agreements and the form of the powers of attorney. Gallagher did not act thereunder. Nelson alone acted. The statutes and regulations governing the case are as follows:

Section 800 of the Revenue Act of 1926 (44 Stat. 99, see 26 U.S.C.A. § 900 and note), provides that: "On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title  *  *  * the several taxes specified in such schedule."

Schedule A (3) reads as follows: "3. Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock  *  *  * or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share." 44 Stat. 101.

Regulation 71, relating to stamp taxes on documents imposed by the Revenue Act of 1926 and the Revenue Act of 1928, contains the following provisions:

"Art. 31. *Basis of Tax.*—Every transfer or sale of stock, either before or after issuance of a certificate, is taxable. The tax accrues at time of making the sale  *  *  * or delivery of or transfer of the legal title to shares, or certificates of stock  *  *  * or of the right to subscribe for or to receive such shares or certificates, regardless of the time or manner of the delivery of the certificates, or agreement or memorandum of sale."

"Art. 34. *Sales and Transfers Subject to Tax.*—The following transactions are subject to the tax:

"(a) The sale, or transfer, or change of ownership, of certificates of stock, or of profits, or of interest in property or ac-

cumulations in corporations, joint-stock companies, or associations.

"(b) The sale or transfer of shares of stock, whether or not represented by certificates.

"(c) The transfer of stock to or by trustees. * * *

"(g) The transfer of the interest of a subscriber for stock, however such interest may be evidenced or conditioned upon further payments.

"(h) The transfer of the right to subscribe for stock in any corporation, joint-stock company, or association, whether or not evidenced by warrants. * * *

"(t) The transfer of the right to receive stock which a corporation has unconditionally agreed to issue.

"(u) Transfers of stock are subject to the tax even though the holders thereof are not entitled in any manner to the benefit of the stock."

The process of completing the reorganization of the companies exacted, as stipulated by the parties, stamp taxes on, first, the original issue of all the stock issued by the new company; second, on the old company's transfer of its right to receive the new company's stock; third, on Nelson's transfer of the stock coming to him under the power of attorney to the bankers, and, finally, upon the bankers' sale of the stock to the public. With respect to these transactions the proper stamp taxes were fully paid.

The defendant contends that inasmuch as the new company was obligated to and did issue 100,000 shares of its common stock directly to the stockholders of the old company in the ratio of their respective holdings, and 40,000 shares of common stock, together with 34,538 shares of preferred stock, to Nelson, acting as attorney in fact for the stockholders, legal title to the last-named shares vested in Nelson. Therefore, the right to receive the stock Nelson sold to the bankers had to be transferred to Nelson in order to execute the sale to the bankers.

The argument advanced overlooks the decision of the Supreme Court in the case of Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111. The right to receive the stock of the new company was under the foregoing decision vested in the old company, and upon the transfer of this right to its stockholders the old company paid a stamp tax of $4,020.46, which the plaintiff now concedes it may not recover.

The findings conclude the plaintiff's right to recover a judgment. The status of the transaction clearly shows that what the stockholders of the old company did was to appoint an intermediary, an agent in fact, acting under powers of attorney, to execute for them a pre-existing agreement to sell to the bankers the stock involved. This the attorney did; and upon the transfer of said stock paid the stamp tax exacted under the revenue act. National Bond & Share Corporation v. Hoey (D.C.) 14 F.Supp. 787.

Nelson, the stockholders' attorney in fact, owned in his own right 7,069 shares of common and 6,104 shares of preferred stock in the new company, i. e., he received this stock as his pro rata portion of the new stock because of his stock ownership in the old company, and this block of stock represented his contribution to the total amount of stock sold to the bankers. The defendant concedes that in no event would Nelson be taxable under the contention in this case.

The plaintiff is entitled to a judgment as follows: $1,490.76 tax paid, to which was added $74.54 penalty and $28.33 interest, totaling $1,593.63, with interest as allowed by law. It is so ordered.