## FOUNDERS GENERAL CORP. *v.* HOEY, COLLECTOR OF INTERNAL REVENUE.*

No. 398.   Argued January 8, 11, 1937.—Decided March 1, 1937.

---

* Together with No. 331, *United States* v. *A. B. Leach & Co.,* certiorari to the Circuit Court of Appeals for the Seventh Circuit; and No. 330, *United States* v. *Automatic Washer Co.,* certiorari to the Court of Claims.

Mr. *Royal E. T. Riggs* for petitioner in No. 398.

Mr. *J. P. Jackson,* with whom *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs. Sewall Key* and *George H. Zeutzius* were on the brief, for respondent in No. 398 and petitioner in Nos. 331 and 330.

Mr. *George K. Bowden* for respondent in No. 331.

Mr. *Jesse I. Miller* for respondent in No. 330.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These three cases present, in the main, the same question: When, at the instance of one entitled to receive stock, the certificates therefor are, at his request and for his convenience, issued by the corporation in the name of a nominee who receives no beneficial interest therein, does the transaction involve a transfer by the beneficial owner requiring a documentary stamp pursuant to § 800, Schedule A-3, of the Revenue Act of 1926, February 26, 1926, c. 27, Title VIII, 44 Stat. 99, 101?

The taxpayers seek to recover the amounts alleged to have been wrongfully exacted for the tax, with interest and penalties. In No. 398, the claim of Founders Gen-

eral Corporation for $4,733.33, was denied by the Circuit Court of Appeals for the Second Circuit, 12 F. Supp. 290; 84 F. (2d) 976. In No. 331, the claim of A. B. Leach & Co., Inc., for $16,526.40 was allowed by the Circuit Court of Appeals for the Seventh Circuit. 84 F. (2d) 908. In No. 330, the claim of Automatic Washer Company for $1,593.63 was allowed by the Court of Claims, 83 Ct. Cls. 593; 15 F. Supp. 70. Because of the conflict, we granted certiorari.

1. In the suit brought by the Founders Corporation, the complaint, setting forth the following facts, was dismissed: On September 10, 1929, that corporation agreed with the United States Electric Power Corporation to subscribe for 100,000 shares of its common stock, to be delivered on September 17th, each share to be accompanied by a warrant entitling the holder to subscribe before January 2, 1940 for an additional share. After making the agreement and before delivery of the shares, the Founders Corporation directed that the securities be issued in the name of Benton & Co., as its nominee. Benton & Co. was a partnership, organized in 1928 solely to hold in its name securities belonging to the plaintiff, and to transfer them at plaintiff's request. For acting as nominee, the partnership received from plaintiff an annual fee of $1500. By contract between Benton & Co. and plaintiff, neither the partnership nor any member thereof could claim any beneficial interest in any securities held by the firm, and plaintiff was appointed agent of Benton & Co. for the sale and transfer of securities registered in the partnership name. The stock issued by the Electric Power Corporation in the name of Benton & Co. was delivered to the Founders Corporation.

Stamp taxes were confessedly payable on the original issue, and on the transfer of any securities from Benton & Co. to the public. The only tax challenged is that upon the alleged transfer by plaintiff to Benton & Co.

of the right to receive the stock of the Electric Power Corporation.

2. In the suit brought by A. B. Leach & Co., Inc., the declaration upon demurrer to which the recovery was had, set forth the following facts: That concern, being engaged in the business of selling securities to the public, organized five corporations; subscribed for all their stock; and directed that the stock be issued in the name of Vercouter, an employee. It is conceded that he had no beneficial interest in the stock; had no authority to act except as directed by A. B. Leach & Co., Inc.; and received the certificates solely for its benefit and convenience in connection with future sales to the public.

Stamp taxes were confessedly payable on the original issue, by the five corporations. The only tax challenged is that upon the alleged transfer by the taxpayer to Vercouter of the right to receive the stock of the five corporations.

3. In the suit brought by Automatic Washer Company, the facts found on which recovery was allowed are these: An agreement, dated June 22, 1928, between Folds, Buck & Company, bankers, and Nelson, a stockholder and officer of the Washer Company's corporate predecessor, provided that Nelson proposed to cause the latter concern to be reorganized as a Delaware corporation which should acquire the assets and assume the liabilities of the old company; that the new company should issue therefor 140,000 shares of common and 40,000 shares of preferred; and that the bankers should have the option of acquiring for $1,000,000 40,000 shares of the common and 40,000 shares of the preferred. On September 17, 1928, the stockholders of the old company agreed with Nelson to contribute ratably the shares in the new which were to be sold to the bankers. To this end, each irrevocably appointed Nelson and one Gallagher attorneys in fact to receive the stock of the new company and to

make sale thereof to the bankers. The new company, the taxpayer, was organized. On September 27, 1928, the two companies agreed that the assets should be transferred to the new in consideration of its issuing its common and preferred stock to the stockholders of the old. The agreement recited the arrangement with the bankers and that:

"In order to carry out this plan . . . each of the stockholders of the Old Company has irrevocably constituted and appointed H. E. Nelson and W. N. Gallagher his attorneys in fact to receive the respective securities of the New Company to which such stockholder may be entitled and to make sale of that portion thereof to be contributed by such stockholder for the purpose of carrying out said agreement of sale with the Bankers. . . . Accordingly, the New Company . . . shall issue such certificates in such names and for such amounts as shall be specified in the joint order of the said H. E. Nelson and W. N. Gallagher, the attorneys in fact . . . and deliver the same to said attorneys in fact . . ."

The 74,538 shares designed to be sold to the bankers were issued to Nelson.[1] Of these, 13,173 were the pro rata contribution of Nelson.

The taxpayer concedes now that stamp taxes were payable on the original issue of all the stock by the new company; on the old company's transfer to its stockholders (including Nelson) of its right to receive the new company's stock; on Nelson's transfer to the bankers; and on the bankers' sales to the public. The Government concedes now that taxes are not payable on Nelson's alleged transfer to himself of his 13,173 shares which were to go to the banker. The tax challenged is

[1] In the eventual determination of the pro rata contribution by the old company's stockholders to the stock to be sold to the bankers, the amount of preferred to be sold was reduced to 34,538 shares. See 15 F. Supp. 70, 74.

that on the alleged transfer to Nelson of the right to receive the 61,365 shares which the other stockholders contributed.

The applicable part of § 800, Schedule A—Stamp Taxes, is as follows:

"3. Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share: *Provided,* That it is not intended by this title to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, nor upon the delivery or transfer for such purpose of certificates so deposited, nor upon mere loans of stock nor upon the return of stock so loaned: *Provided further,* That the tax shall not be imposed upon deliveries or transfers to a broker for sale, nor upon deliveries or transfers by a broker to a customer for whom and upon whose order he has purchased same, but such deliveries or transfers shall be accompanied by a certificate setting forth the facts . . ."

*First.* In each case, the person originally entitled to receive the certificate directed, for his own convenience and purposes, that it be issued in the name of a nominee. It is argued in the *Automatic Washer Company* case,

that the stockholders of the old company never acquired the "right to receive" that portion of their stock which was designed for transfer to the bankers; that they did not become entitled to receive shares in the new company until the contract with it was made on September 27th; that prior thereto, they had irrevocably agreed that Nelson should receive and sell the shares which were to go to the bankers; and that, thus, the stockholders of the old company had, prior to the original issue of the stock in the new, relinquished "the power to command the disposition of the shares" and, therefore, never exercised that power, held taxable in *Raybestos-Manhattan, Inc.* v. *United States*, 296 U. S. 60. But essentially the same argument was made and rejected in the *Raybestos* case, page 62. There the transaction was held to have involved a taxable transfer of rights to stock, though the old companies had no right to the stock in the consolidated company prior to the execution of the contract whereby the issue to their stockholders was directed. "The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements." *Id.*, 63. Compare *Helvering* v. *Midland Mutual Life Insurance Co.*, *ante*, p. 216. The situation here is in substance the same as in the *Raybestos* case. When the powers of attorney were executed, there was nothing upon which they could operate. The rights to receive the stock in the new company, and the transfer thereof, were effected at one time by the same document.

*Second.* It is true that in none of the three cases did the transaction involve the transfer of a beneficial interest. But that fact is, in view of the language of the Act, without legal significance. The tax is exacted because the taxpayer transferred "the right to receive" the certificate. Likewise it is without legal significance that, under power of attorney from nominee to beneficial owner, the former may have no part in the management or disposal of the securities. Nor is it material that in no case did the

nominee have a right, at least as against the taxpayer, to compel issuance of the stock to himself. The legal title to the shares was received by the nominee from the newly formed corporation; but the authorization rendering his holding lawful was received from the taxpayer. The legality of the issuance of the stock in the names of the nominees rests on the fact that the taxpayers authorized such issuance and granted their nominees the right to receive the stocks entered in their names. The grant of that authority is a transfer of "the right to receive" within the meaning of the Act; and we are not to look beyond the Act for further criteria of taxability. See *Burnet* v. *Harmel,* 287 U. S. 103, 110.

The statute defines the scope of the tax in terms whose breadth is emphasized by the careful particularity of its provisos. Especially indicative of Congressional intention that nominee transactions generally should be subject to the tax are the provisos added by the Revenue Act of 1932, June 6, 1932, c. 209, § 723, 47 Stat. 273, and the Act of June 29, 1936, c. 865, 49 Stat. 2029, which except certain specifically described transfers to nominees.

*Third.* It is suggested that in each case the taxpayer might have attained his ultimate purpose by a form of transaction which would not have subjected him to the tax. The suggestion, if true, furnishes no reason for relieving him of tax when, for whatever reason, he chooses a mode of dealing within the terms of the Act. Compare *United States* v. *Isham,* 17 Wall. 496, 506; *Provost* v. *United States,* 269 U. S. 443, 457, 458. To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty. "There must be a fixed and indisputable mode of ascertaining a stamp tax." *Hatch* v. *Reardon,* 204 U. S. 152, 159.

*In Number 398, judgment affirmed.*
*In Number 331, judgment reversed.*
*In Number 330, judgment reversed.*