## BECKER, Collector of Internal Revenue, v. BANK OF COMMERCE LIQUIDATING CO.
### No. 11314.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1939.

Rehearing Denied May 9, 1939.

7

Paul S. McMahon, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., Herbert H. Freer, Asst. U. S. Atty., of St. Louis, Mo., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for appellant.

H. M. Stolar, of St. Louis, Mo. (Henry C. Lowenhaupt and Lowenhaupt, Waite & Stolar, all of St. Louis, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an action against the Collector of Internal Revenue for the First Collection District of Missouri to recover a documentary stamp tax in the amount of $1000. The tax, paid under protest, was exacted under section 800, Tit. 8, Schedule A 3 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 99, 101, 26 U.S.C.A. §§ 900, 902(b). A jury was waived, and the case was submitted to the court upon a stipulation of facts. The court entered judgment for the plaintiff and the Collector appeals.

The factual background of the controversy will make clear the question to be answered. The stockholders of the National Bank of Commerce in St. Louis (hereinafter called the national bank), a national banking association, and the stockholders of the Mercantile Trust Company of St. Louis, a Missouri banking corporation, desired to bring about a consolidation of the two banks into a new trust company organized under the laws of Missouri. There was doubt as to whether a national bank and a state bank can legally consolidate. A plan was adopted to avoid this legal difficulty. The plan contemplated the organization under the Missouri law of an intermediary trust company to which the national bank should convey that part of its assets to be contributed by it to the proposed consolidated trust company. For the purpose of carrying out the plan, the stockholders of the national bank on February 15, 1929, executed a written depository agreement by the terms of which they deposited their stock in the bank with three trustees who were authorized to effect the merger and consolidation of the two banks. On April 6, 1929, the national bank caused a

new intermediary trust company to be organized under the laws of Missouri under the name of Bank of Commerce Trust Company, and that part of the assets of the national bank to be contributed to the consolidated bank was conveyed to the new corporation in exchange for its stock. The remaining assets of the national bank were conveyed, in exchange for its stock, to the petitioner, Bank of Commerce Liquidating Company. On April 15, 1929, the intermediary Bank of Commerce Trust Company and the Mercantile Trust Company, both Missouri corporations, entered into a consolidation agreement. The merger was completed on May 18, 1929, by the incorporation under Missouri law of the new consolidated bank named the Mercantile-Commerce Bank and Trust Company, hereinafter called the consolidated bank. The new bank issued 100,000 shares of stock, 50,000 of which were issued on account of the transfer to it of the assets of the intermediary trust company organized by the national bank. The intermediary trust company thereupon waived its right to receive such stock in favor of the stockholders of the national bank, and directed the officers and directors of the consolidated trust company to issue the stock to the trustees named in the depository agreement of February 15, 1929. On the same day, May 18, 1929, the trustees addressed the following letter to the consolidated bank:

"Gentlemen: You are hereby directed to issue the certificates for the shares of your stock which are to go to the stockholders of The National Bank of Commerce in St. Louis who have deposited their shares with the undersigned under depository agreement of February 15th, 1929, direct to such depositors or to their assigns, as shown on the records of The National Bank of Commerce in St. Louis, depository of said stock.

"The undersigned hereby waive their right to have the certificates for said stock issued to them as the nominal holders of said stock of The National Bank of Commerce in St. Louis."

It was to this letter that the Commissioner required the stamp for $1000 here in question to be affixed on the ground that the letter evidenced the transfer of the right of the trustees to receive said shares within the meaning of the statute.

The pertinent provision of the statute (Revenue Act of 1926, section 800, Sched-

ule A 3) upon which the Commissioner based his ruling is as follows:

"On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid * * *."

"3. On all sales * * * or transfers of legal title to shares * * * in any corporation, or to rights to subscribe for or to receive such shares * * * whether made upon or shown by the books of the corporation * * * or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents * * *."

Article 34 of Treasury Regulations 71 promulgated under the Revenue Act of 1926 provides that the following transactions are subject to the tax:

"(c) The transfer of stock to or by trustees.

"(t) The transfer of the right to receive stock which a corporation has unconditionally agreed to issue."

Counsel for appellant say the question presented for determination is whether the issuance of stock certificates of the consolidated trust company to the stockholders of the national bank involved a taxable transfer of the right to receive such stock by the trustees named in the deposit agreement of February 15, 1929.

Counsel for the appellee say the question is whether the trustees, "by failing to exercise their authority to take the stock" of the consolidated trust company, "transferred such stock to their principals, the depositors of the stock" of the national bank.

These two ways of stating the question indicate the divergent points of view of the parties. Appellant contends that the letter of the trustees of May 18, 1929, directed to the consolidated trust company constituted a transfer of the right to receive the stock while appellee maintains that it constituted only a failure to exercise an authority to take the stock.

Whether the trustees had a "right to receive" the stock or only an "authority to take" it depends upon the meaning of the deposit agreement of February 15, 1939. The powers and duties of the trustees are defined in that instrument. The agreement is too long to be set out in this opinion. The pertinent parts of it are copied in the footnote.[1]

Turning to the contention of appellee, the distinction sought to be drawn between the "authority" and the "right" of the trustees to receive the stock is without substance. The authority granted in the contract constituted a right, although fiduciary, in the trustees. The stock certificates in the national bank were transferred to the trustees "together with any and all rights and beneficial interests to which the holder(s) of said stock certificate(s)" were entitled. The trustees were given many powers and duties under the contract to be exercised and performed in

---

[1] Each of the second parties (stockholders) hereto has assigned and transferred to, and does hereby assign and transfer to and deposit with said Trustees hereunder certificates representing the number of shares of capital stock of the Bank of Commerce as set forth in the several certificates of deposit issued therefor, together with any and all rights and beneficial interests to which the holder of said stock certificates is entitled as evidenced by said stock certificates. Said stock shall be transferred on the books of the Bank of Commerce to the names of said Trustees, and shall be held by them in trust and disposed of as herein provided.

Said Trustees shall have the power to exercise from time to time during the life of this trust, all the rights, powers and privileges of absolute owners of all stock deposited with or held by them hereunder.

When the plan for such consolidation shall have been consummated the Trustees are hereby authorized and directed to receive the stock in said consolidated trust company to which the depositors, respectively, would be entitled, in the proportion as above set out. The stock of said consolidated trust company may be issued in the name of the Trustees and said Trustees may transfer and deliver all said certificates of stock to the registered holders of certificates of deposit hereunder in exchange for and upon surrender of said certificates of deposit. Said Trustees are also authorized and directed to receive the stock in said liquidating company and to deliver the same to the registered holders of certificates of deposit in a like manner. Upon the delivery of said stock in the consolidated trust company and the stock in said liquidating company to the certificate holders, this trust shall cease and be at an end.

the consolidation of the two banks; and, when the plan for consolidation should be consummated, they were "authorized and directed to receive the stock in the consolidated trust company" and "to transfer and deliver" it to the registered holders of the certificates of deposit. The trustees regarded this as a right. In their letter of May 18, 1929, they waived "their right to have the certificates of said stock issued to them as the nominal holders."

██ Neither was the "failure of the trustees to exercise their authority to receive" the stock a mere negative act. They "directed" the consolidated bank "to issue the certificates" to the stockholders of the national bank. A positive failure to exercise the power to receive stock may be a taxable event, where the right exists. Founders General Corp. v. Hoey, 300 U.S. 268, 274, 57 S.Ct. 457, 81 L.Ed. 639. Neither is it significant that the transaction did not involve the transfer of a beneficial interest. Founders General Corp. v. Hoey, supra, 300 U.S. page 274, 57 S.Ct. 459, 81 L.Ed. 639. It is true the contract of February 15, 1929, might have provided for the issuance of the stock directly to the stockholders of the old bank and thus avoided the creation of the right in the trustees to receive the stock, but it did not do so. When the parties chose "a mode of dealing within the terms of the Act", a tax can not be escaped. Founders General Corp. v. Hoey, supra, 300 U.S. page 275, 57 S.Ct. 460, 81 L.Ed. 639. The case is controlled by Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Founders General Corp. v. Hoey, supra; and American Gas Machine Co. v. Willcuts, 8 Cir., 87 F. 2d 924.

██ It is said by appellee that as between the trustees and the stockholders, the latter were entitled to receive the stock, because the former were trustees of a dry or passive trust. It is not shown how this fact, if it be true, matters under the statute; but it is true only in a limited sense. The trust as an entirety was in no sense a dry trust. On the other hand, it was a very active trust; and the active duties of the trustees were not completed until the entire plan for the consolidation of the two banks had been consummated. The plan was not consummated until the stockholders of the national bank had become the stockholders of the consolidated bank.

██ The lower court further held that upon the transfer of the assets of the intermediary trust company organized by the trustees to the consolidated bank the stockholders of the national bank were entitled to receive the stock of the new bank in their own right by virtue of the Missouri statutes. This theory does not properly take into consideration the rule that the determination of a federal tax depends upon the application of the federal statute and is not subject to state control. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199.

██ The lower court relied upon the Treasury Regulations and the Missouri statutes. Article 35 of Treasury Regulations 71 provides: "(q) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from the decedent to executor."

In providing for the consolidation or merger of Missouri banks, section 5481 of Article 4, Revised Statutes of Missouri, 1929, Mo.St.Ann. § 5481, p. 7670, provides: "Receiving company shall issue new certificates for old, when.—The receiving company under the merger, or the consolidated company, may require the return of the original certificate or certificates held by each stockholder in either of the merging companies or in either of the consolidating companies, unless any such certificate or certificates have been lost or destroyed, and shall cancel said original certificates and issue in lieu thereof new certificate or certificates for such number of its own shares as such stockholders may be entitled to receive under the agreement providing for the merger or for the consolidation and according to the terms and conditions contained in the agreement for such merger or such consolidation; * * *."

It will be observed that the statute in no way affects the tax in question. It provides a method only for consummating a merger or consolidation, but does not purport to relieve stock transfers from the burden of federal taxes. At most it provides that the new bank "may" require certain things to be done, but the new stock certificates under the statute must be issued to such stockholders as may be en-

638

·titled to receive under "the agreement for such merger". Applying the statute literally it would refer to the stockholders of the intermediary bank which made the contract of merger with the Mercantile Bank. The difficulty with this theory is that in order to reach the conclusion that the present transfer is not taxable it is necessary to say that the arrangement made by the parties is equivalent to some other and different arrangement, but which was not made nor followed. As pointed out by the Supreme Court in Founders General Corp. v. Hoey, supra, 300 U.S. at page 275, 57 S.Ct. 460, 81 L. Ed. 639, this furnishes no reason for relieving one from the tax.

The judgment appealed from is reversed and the case remanded with instructions to enter judgment for appellant.

Reversed.