**H. J. HEINZ CO. v. DRISCOLL.**

**No. 853 Civil Action.**

District Court, W. D. Pennsylvania.

Feb. 18, 1941.

As Corrected April 15, 1941.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

George Mashank, Acting U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Paul F. Mickey, Sp. Assts. to Atty. Gen., for defendant.

GIBSON, District Judge.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

## Findings of Fact

1. Plaintiff is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Pittsburgh, Allegheny County, Pennsylvania.

2. Defendant is a resident of Pittsburgh, Pennsylvania, and is, and has been ever since March 1, 1936, the duly qualified and acting Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania.

3. Plaintiff has an authorized capital of $36,000,000 consisting of 360,000 shares of common stock having par value of $100 a share. On September 30, 1934, plaintiff had authorized and outstanding 300,000 shares.

4. Sometime prior to the period here involved, plaintiff created a plan and agreement for the purchase of stock of the plaintiff by certain of its employees. The pertinent provisions of the agreement are as follows:

"First. The Company, upon the execution and delivery hereof, will cause to be placed in the name of the Employee upon the separate private stock ledger kept by the Treasurer hereinafter referred to, but subject to this agreement, ———— shares of the fully paid stock of the Company; but the Company shall be under no obligation to issue to the Employee any certificate or certificates for or with respect to the said shares except as herein, in the Sixth paragraph hereof, expressly provided.

"Second. The Company will receive payment for the Employee's interest in said shares as herein provided at the price of ———— Dollars ($    ) per share, which sum has been ascertained, in the method provided by the Eighth paragraph hereof, to be the present book value of the shares of the capital stock of the Company. Payment of said price, with interest from the date hereof at the rate of ———— per cent. (——%) per annum, shall be made to the Company by applying or crediting against the same all cash dividends hereafter declared and payable by the Company upon said shares during the term of employment of the Employee by the Company until said price shall have been fully paid, after which all cash dividends declared upon said shares shall be paid to and retained by the Employee, subject, however, to the terms of this agreement. The Employee, at his option, may make payment of said price, or any part thereof, from time to time in cash, but it is distinctly understood and agreed that he is under no obligation so to do and that this agreement shall create no personal charge or liability whatever against the Employee or his estate for the payment of said price.

"Third. Any and all stock dividends upon said shares and any and all dividends of any character declared and payable otherwise than in cash while the rights of the Employee hereunder continue, whether before or after full payment of said price in the manner above provided, shall be placed in the name or to the credit of the Employee upon the private stock ledger * * *.

"Fourth. In case the Company hereafter, while the rights of the Employee hereunder shall continue, shall make any increase of its capital stock to which the stockholders of the Company shall have the right of subscription * * *.
* * *

"It is expressly understood and agreed that the rights of the Employee hereunder in or with respect to any and all such shares are strictly personal, and that, except with the express assent of the Company, neither said rights nor said shares shall be subject to sale, pledge, assignment or transfer by the Employee, his executors or administrators at any time or in any manner save as herein expressly provided, * * *.

"Sixth. The rights and interest of the Employee with reference to the said original shares, dividend shares and additional shares, if any, set aside for or placed in his name on the private stock ledger under the provisions hereof shall continue so long as he shall remain in the employment of the Company, but, except as herein provided, shall terminate when his employment shall cease. * * * Upon the delivery of any certificate or certificates as herein provided to the Employee, the said certificate or certificates shall be evidence of the absolute ownership of the shares represented thereby free and discharged from all restrictions, limitations and conditions of this agreement.

"Seventh. For the purpose of enabling transfers to be made when the same under the terms and provisions hereof shall be

necessary or proper, the Employee does hereby assign, transfer and set over unto the Company, its successors and assigns, all the estate, right, title and interest of the Employee of, in and to any and all of said original shares now set aside or placed in his name, and also of, in and to any and all dividend shares or additional shares, if any, to be hereafter set aside or placed in his name hereunder, and of, in and to any and all dividends of any and every character declared or to be declared on said shares or any of them; and does hereby irrevocably appoint ———, the present Treasurer of the Company, or the person who at the time shall hold the office of Treasurer of the Company, to make and execute for and on behalf of the Employee and in his name, upon the books of the Company or otherwise, any and all such further or other assignments or transfers as shall be requisite and proper to carry out the true intent and meaning of this agreement * * *.'"

5. During the period from September 30, 1934, to March 8, 1938, plaintiff entered into agreements with various employees covering 13,283 shares of its common stock. As each one of these contracts was executed, plaintiff caused to be placed in the names of the respective employees upon a separate private stock ledger kept by its treasurer in accordance with the terms of the agreement, the number of shares designated in the contract, and plaintiff executed in the name of "Treasurer of H. J. Heinz Company" a stock certificate for the number of shares so designated.

6. Subsequent to execution of each of the agreements and in accordance with the terms of the agreements, the company applied or credited against the purchase price of the shares designated in the respective agreements all cash dividends thereafter declared upon these shares, and the treasurer of the plaintiff exercised the voting power as to said shares.

7. On February 2, 1937, plaintiff declared and paid a 20 per cent stock dividend, to be paid in shares of its common stock which were authorized but had not been issued. On that date plaintiff had existing with employees agreements involving a total of 33,115 shares. Accordingly, plaintiff executed certificates for 6,623 shares, representing the amount of the stock dividend allocable to the 33,115 shares. The certificates were executed in the name of "Treasurer of H. J. Heinz

Company." Dividends were subsequently paid by plaintiff upon these shares and the treasurer of the plaintiff exercised the voting rights thereon.

8. On or about October 14, 1937, plaintiff voluntarily purchased from the Mellon National Bank of Pittsburgh Federal documentary stamps in the amount of $662.-30, and placed the said stamps on the certificates for the 6,623 shares issued as a dividend. The said stamps were placed upon said stock certificates for the reason that plaintiff believed that the transactions referred to in said paragraph seventh were subject to the issuance tax imposed by Schedule A-2 of Title VIII, § 800 et seq., of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 288.

9. Upon execution of the agreements, and of the certificates representing the number of shares designated in such agreements in the name of the treasurer of the plaintiff, there occurred a transfer or sale or agreement of sale, which was subject to a tax imposed by Schedule A-3 of Title VIII, § 800 et seq., of the Revenue Act of 1926, as amended by Section 723 (a) of the Revenue Act of 1932, 26 U.S.C.A. Int. Rev.Acts, page 290.

10. The Commissioner assessed a tax under Schedule A-3 in the amount of $531.-32 in connection with the 13,283 shares of stock which were then involved in the agreements entered into by plaintiff with its employees.

11. Pursuant to notice of assessment and demand for payment issued to plaintiff by the defendant, plaintiff on or about October 24, 1938, paid to defendant the said tax assessed against it in the sum of $531.-32.

12. On or about April 29, 1939, plaintiff filed a claim for refund of the issuance tax in the amount of $662.30, and the stock transfer tax of $531.32.

13. The Commissioner duly rejected the claim filed by plaintiff, and no part of the said tax of $1,193.62 has been refunded or credited to the plaintiff.

### Conclusions of Law

I. The determination of the Commissioner that upon execution of the agreements and of the certificates representing the number of shares designated in such agreements in the name of the treasurer of the plaintiff there occurred a transfer which was subject to a tax imposed by

Schedule A-3 of Title VIII of the Revenue Act of .1926, as amended by Section 723 (a) of the Revenue Act of 1932, was in all respects correct.

II. The tax assessed by the Commissioner under Schedule A-3 in the amount of $531.32 in connection with the 13,283 shares of stock which were involved in the agreements entered into by plaintiff with its employees was in all respects correctly and lawfully assessed and collected.

III. The determination of the Commissioner that upon the issuance by the plaintiff of certificates for 6,623 shares of stock as the amount of a 20 per cent stock dividend declared by it on February 2, 1937, which was allocable to the 33,115 shares of stock then involved in agreements with its employees, was in all respects correct.

IV. The tax assessed and collected from plaintiff upon the original issuance of the 6,623 shares under Schedule A-2 of Title VIII of the Revenue Act of 1926, as amended by Section 722 (a) of the Revenue Act of 1932, was in all respects correctly and lawfully assessed and collected.

V. The defendant is entitled to judgment against the plaintiff dismissing the complaint on its merits with costs.

### Discussion

Plaintiff has brought suit for the refund of Federal issuance and stamp taxes paid by it.

Prior to date of suit, plaintiff had instituted what it termed a stock purchase plan for its employees. This plan was executed pursuant to an agreement with each employee who participated in it. By that agreement the Company contracted to cause a certain number of shares of its stock to be credited to the employee in a special stock ledger. This stock was ultimately to be paid for by the Company crediting the *dividends thereon* against the purchase price, with the option to the employee of paying the entire amount in cash, but without any obligation on his part to do so. By the agreement it was provided that the Company would transfer on its general stock ledger to the Treasurer of the Company a sufficient number of shares of its full paid capital stock to provide for the execution of the agreement. In the section of the agreement so stipulating it was further agreed that this action "shall not be construed as thereby making the Employee a stockholder of record", and "the Employee shall neither have nor exercise any voting power upon said shares." By another section of the agreement it was declared that the Employee had no right to sell, pledge or assign the stock in the Treasurer's hands except as further provided. By the agreement the right of the Employee with reference to the shares on the private stock ledger was to continue so long as he remained in the employment of the Company, and when the employment ceased the Company had the option of extinguishing his rights by paying the book value of the shares. In case of full payment for the shares under the plan, the Company also had the option of paying the book value of the shares or turning over the stock certificates. And by the seventh paragraph of the agreement the Employee assigned, transferred and set over his interest in the shares of the agreement to the Treasurer of the Company, and appointed the Treasurer his attorney to execute on his behalf such further assignments or transfers as may be requisite.

On February 2, 1937, plaintiff had agreements with employees involving 33,115 shares of its stock, and on that date declared and paid a 20% stock dividend and 6,623 shares were turned over to the "Treasurer, H. J. Heinz Company", under the agreement. To September 23, 1938, 4,460 additional shares had been issued to employees.

In October, 1937, the Company purchased Federal documentary stamps in the amount of $662.30, and attached them as required by statute in payment of the issuance tax of ten cents per share. This payment was erroneous, plaintiff claims, and now seeks to recover the amount so paid, with interest. After the payment of this issuance tax the Commissioner of Internal Revenue demanded that a transfer tax of four cents per share be paid. This was based upon that part of the agreement by which the employee transferred his rights in the stock to the Treasurer of the Company, for the purpose of making necessary assignments and transfers.

■ The plaintiff now contends that the stock credited to the employees under the plan was never issued so as to become subject to the issuance-tax required by Schedule A-2 of the Revenue Act of 1926, as amended, and that the placing of a certificate in the name of the Company's Treasurer was for the sole purpose of identifying the number of shares involved in the agreements with the employees. The cor-

ner-stone of this argument is the fact that at all times, until full payment therefor had been made, the stock was under the control of the Company, and after full payment the Company had the option of delivering the market value of the stock to the employees instead of the stock certificates. The contention is that the stock credited to the employees in the Treasurer's private stock ledger was never anything else than treasury stock.

■ The position of the plaintiff in this respect, it must be admitted, seems to the court to be little short of visionary. Its every action prior to the claim for refund contradicts it. First, the plan was called by the Company itself a *stock purchase plan* for its employees. Second, the Company, without demand upon it, paid the tax, thus showing the interpretation which it placed upon the agreement. And again, the Treasurer voted the stock set aside under the Agreement at stockholder's meeting; and yet again, dividends were declared and paid upon the stock held under the agreement and credited to the participating employees. Dividends cannot be declared upon treasury stock, and if plaintiff were to carry out its argument to its logical conclusion it might say to a participating employee, after long service and many dividends, that he was entitled to nothing under the agreement because no payments have been legally made for the stock contemplated by his agreement. The second paragraph provides, in part: "The Company will receive payment for the Employee's interest in said shares as herein provided at the price of ———— * * *. Payment of said price * * * shall be made to the Company by applying or crediting against the same all cash dividends hereafter declared and payable by the Company upon said shares during the term of employment of the Employee by the Company until said price shall have been fully paid, after which all cash dividends declared upon said shares shall be paid to and retained by the Employee, subject, however, to the terms of this agreement."

If the shares credited to employees upon the private stock ledger kept by the Treasurer were treasury stock, no dividend could be declared upon them and, consequently, no price could be credited to the employee. The Company would not assume any such position with its employees; and the court can conceive of no sound reason why, the basic facts being the same, a position untenable against employees should be tenable against the Collector of Internal Revenue.

Insofar as the issuance tax is a question, judgment will be entered against plaintiff.

■ The transfer tax phase of the instant case is not quite so plain as the matter of the issuance tax. The stock in question was credited to the employees on the private stock ledger kept by the Treasurer, but the stock was actually issued directly to the Treasurer to be held in trust by him for the employees under the conditions of the stock purchase agreement. In itself it means nothing in respect to the tax liability of plaintiff if the Company, instead of transferring the certificates to the employees and, under the agreement, then causing the employees to transfer them to the Treasurer, actually transferred them directly to the Treasurer. See Founders General Corp. v. Hoey, 300 U.S. 268, 274, 57 S.Ct. 457, 81 L.Ed. 639; Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111. Each employee who was a participant in the stock purchase plan, by the seventh paragraph of the agreement assigned his interest in the shares set aside or placed in his name to the Company and constituted the Treasurer his attorney in fact for the purpose of making all necessary transfers. The interest in the stock so assigned was contingent, it is true, but nevertheless an interest of the employee. Schedule A-3 of the Revenue Act of 1926, as amended, taxes the right to receive, as well as the right to transfer, all interests in stock. And no transfer is free from taxation because made to one who, as the treasurer herein, has no beneficial interest in the stock received. Founders General Corp. v. Hoey, supra.

That there was a transfer of the certificates seems plain. Plaintiff contends, however, that even if a transfer be found as a fact it is still relieved from the payment of a transfer tax. It so claims by reason of its interpretation of the provisions of Schedule A-3 of the Act of 1926, reading in part as follows: "Provided, That it is not intended by this title to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold * * *."

■ This contention is not well founded. It will be noted that the exemption of the statute is limited to certificates which "are not actually sold." The certificates in

suit were the subject of a sale, not a loan. The plaintiff, in its complaint, asserted that it had "created a stock purchase plan for its employees." The fact that delivery was deferred until full payment does not change the transaction from a sale to a loan.

Judgment will be entered for the defendant.