**PREMIER SHARES, Inc., v. ROTHENSIES, Collector of Internal Revenue.**

**No. 7563.**

Circuit Court of Appeals, Third Circuit.

Feb. 19, 1941.

William H. S. Wells, of Philadelphia, Pa. (Saul, Ewing, Remick & Saul, of Philadelphia, Pa., on the brief), for appellant.

J. Leonard Lyons, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., and Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Section 800, Title VIII of the Revenue Act of 1926, and Schedule A(3) as amended by Section 723 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 284, 290, imposes a stamp tax, inter alia, upon transfers of legal title to or rights to receive shares of stock in a corporation. Acting under these statutory provisions the Collector assessed a stock transfer tax upon Premier Shares, Inc., the plaintiff. The plaintiff paid the tax under protest and, after the rejection of its claim for refund, brought suit in the District Court for the Eastern District of Pennsylvania to recover the amount so paid. The case was tried to a judge without a jury, the facts being stipulated. The district court denied recovery with respect to the disputed tax, granting the plaintiff judgment only for an amount admitted by the government to be refundable and this appeal followed. The facts, insofar as they are pertinent to the present appeal, are as follows:

By letter dated February 1, 1930, addressed to the attention of the incorporators and directors of the plaintiff, Boenning & Co. and Integrity Trust Company, hereinafter called the bankers, undertook to market at $12.50 per share 500,000 shares of the common stock of the plaintiff. By letter dated September 22, 1932, addressed to the board of directors of the plaintiff the bankers undertook to market an additional 500,000 shares. Between June 11, 1930, and January 16, 1934, the bankers sold 233,995 shares which were issued directly to purchasers obtained by the bankers and 45,279 shares which were issued to nominees of the bankers. The Collector assessed a tax of $3,919.36 upon the former and $851.96 upon the latter, treating the transactions as transfers by the bankers of their right to receive the shares thus sold.

The plaintiff would have us conclude from the stipulated facts that the bankers were simply agents for the sale of the plaintiff's capital stock and that what they did was merely to find purchasers, collect the purchase price, deduct a commission, and submit to the plaintiff, their principal, the necessary information for the issuance of certificates for the number of shares sold. Under such a construction of the facts there was no transfer of any title or right from the bankers to the purchasers and therefore no transfer subject to the stock transfer tax. The Collector, on the other hand, would have us conclude from the same evidentiary facts that the bankers had contracted for the right to subscribe to the plaintiff's capital stock, that they exercised this option when and as they found customers for the stock and that they thereupon directed the issuance of the stock. Under this view of the facts the bankers transferred their rights to subscribe for and receive the shares to the customers and this transfer was taxable.

In a letter dated February 1, 1930, written by the bankers and addressed to the incorporators and directors of the plaintiff, the bankers undertook "to use their best efforts to market to the public at the price of $12.50 per share" plaintiff's common stock, "the amount to be received by the undersigned as commission for such undertaking will be the sum of 99¢ per share, Premier Shares, Inc. to receive the net amount of $11.51 per share." In a letter dated September 24, 1930, the bankers referred to themselves as having been employed at a fixed commission to dispose of the stock. This appears to be the only positive evidence in the record to substantiate the plaintiff's claim that an agency relationship was created. The plaintiff introduced no evidence from which the court could determine whether the bankers, in dealing with the public, purported to do so merely as selling agents, or whether the plaintiff ever issued to the purchasers of the stock a confirmation as seller.

To offset this evidence of agency the Collector points to the following facts in the stipulation: In a memorandum attached to the letter of agreement of February 1, 1930, the bankers refer to it as "an option to purchase," and refer to the stock issue as "under option." In the agreement the bankers obligate themselves to pay the

expenses of the plaintiff's incorporation and of the stock offering. In a letter to the plaintiff dated July 18, 1930, the bankers confirmed "our purchase from you of 1,794 shares." Orders for stock were given by the bankers and cash was paid by them not later than the next business day or if payment was delayed interest was added. Payment was made by the bankers' own check. On certain dates the bankers had paid for and were entitled to receive large numbers of shares which were held by the plaintiff awaiting "transfer instructions" from the bankers.

.The district court concluded that the bankers had an option to buy the plaintiff's stock under the agreements and that when they sold the stock to the public they transferred to the purchasers their right under the option to purchase and pay for it. Holding that this constituted a taxable transfer the court dismissed the complaint as to the tax here in controversy. We think that the conclusion of the district court as to the legal relationship between the bankers and the plaintiff with respect to the stock of the latter is fairly supported by the stipulated facts and the inferences reasonably to be drawn therefrom. The conclusion that sales by the bankers involved a transfer by them to their customers of their right to receive the shares necessarily follows.

It is now well settled that a transfer of the right to receive shares is subject to the stock transfer tax. Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639; Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Ladner v. Pennroad Corp., 3 Cir., 97 F.2d 10, certiorari denied 305 U.S. 618, 59 S.Ct. 78, 83 L.Ed. 394. So in Raybestos-Manhattan Co. v. United States, supra, Mr. Justice Stone said (page 63 of 296 U.S., page 65 of 56 S.Ct., 80 L.Ed. 44, 102 A.L.R. 111): "The subject of the tax is not alone the transfer of ownership in shares of stock. It embraces transfers of rights to subscribe for or receive shares or certificates. * * * The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements." And again (page 62 of 296 U.S., page 64 of 56 S.Ct., 80 L.Ed. 44, 102 A.L.R. 111): "The stock transfer tax is a revenue measure exclusively. * * * While the statute speaks of transfers, it does not require that the transfer shall be directly from the

hand of the transferor to that of the transferee. It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another."

The judgment of the district court is affirmed.