**GRIFFITHS DAIRY, Inc., v. SQUIRE, Collector of Internal Revenue.**

No. 10410.

Circuit Court of Appeals, Ninth Circuit.

Nov. 5, 1943.

Austin E. Griffiths, of Seattle, Wash., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, S. Dee Hanson, and Irving I. Axelrad, Sp. Assts. to the Atty. Gen., J. Charles Dennis, U. S. Atty., and Thomas R. Winter, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, both of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Taxpayer appeals from a District Court judgment in favor of the Collector of Internal Revenue.

Austin E. Griffiths, Jr., and his wife owned a dairy business which had assets valued at $60,685 and consisting of milk routes and dairy equipment. The business was incorporated on July 5, 1940, with an authorized capital of $50,000, represented by 14,000 shares of no par value preferred stock and 36,000 shares of no par value common stock. In payment of the entire 50,000 shares Griffiths conveyed to the corporation the assets of the dairy business. Griffiths had subscribed for 39,000 shares, his wife for 9,000, and one Parry for 2,000 shares. Parry was given his stock in payment of a debt or bonus. At the time of incorporation the indebtedness of the owners in regard to the dairy business was $34,780.

Certificates were issued for only 28,000 of the shares subscribed. The remaining 14,000 shares of preferred and 8,000 shares of common were donated by Griffiths to the corporation as treasury stock. Of these shares 1,000 were subsequently transferred to M. Clothier in part payment of a prior debt and 600 to Donald Sell for the duration of his employment, after which the corporation was to take them back.

The Commissioner of Internal Revenue concluded that the provisions of § 1802(a) and (b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 1802(a) and (b),[1] were applicable to the stock transaction and assessed against the corporation documentary stamp taxes as follows: $55 on the original subscription issue of 50,000 shares, $1,100 on the transfer of 22,000 shares to the treasury, and $50 and $30 respectively on the transfers of 1,000 shares of treasury stock to Clothier and 600 shares to Sell.

Prior to the assessment taxpayer had filed a sworn protest, and thereafter, it filed its

---

[1] § 1802 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1802, as modified by the defense tax rates, June 25, 1940, c. 419, Title II, § 209, 54 Stat. 522:

"Capital stock (and similar interests)

"(a) Original issue. On each original issue * * * of shares or certificates of stock, * * * by any corporation, * * * holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 * * *, on each $100 of par or face value or fraction thereof of the certificates issued by such corporation * * * (or of the shares where no certificates were issued), 11 cents: Provided, That where such shares or certificates are issued without par or face value, the tax shall be 11 cents per share (corporate share * * *), unless the actual value is in excess of $100 per share; in which case the tax shall be 11 cents on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 3 cents on each $20 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued). * * *

"(b) Sales and transfers. On all sales, * * * or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale * * *, on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued) 5 cents and where such shares or certificates are without par or face value, the tax shall be 5 cents on the transfer or sale or agreement to sell on each share (corporate share, * * *): Provided, That in case the selling price, if any, is $20 or more per share the above rate shall be 6 cents * * *."

protest against the amount of the tax together with an agreement to pay $120 each month until the total amount of tax and interest was paid. Only one such monthly payment had been made when the corporation filed a claim requesting abatement of the assessment of $1,235 and of penalty and interest of $170.15. At the same time it filed a petition for refund alleging that the stamp tax did not exceed $100 and asking that the overpayment of $20 be returned. The claim for abatement was rejected by the Commissioner of Internal Revenue, who took no separate action as to the petition for refund.

The instant action to recover back the excess of tax paid was instituted in December of 1941, at which time the installments already forwarded amounted to $600. The District Court in its conclusions of law sustained the assessments as already made with one revision. It reduced taxpayer's stamp tax liability as to the original issue item from $55 to $37.50, or 3 cents on each $20 of actual value, in accordance with its finding that the actual value of the original subscription issue was $25,000.

■ Taxpayer admits that the original subscription tax was correct, except as to basis and amount, and with a similar exception fails to dispute the tax on the transfers to Clothier and Sell. However, it contests the propriety of a tax on Griffiths' donation to it of the unissued 22,000 shares to which he had subscribed. It points out that the government's position would subject it to a threefold tax on the same stock —one when subscribed, one when donated to the corporation, and one when sold by the corporation.

The Supreme Court has held the stamp tax valid with respect to a transaction involving the transfer of the right to receive shares of stock. Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639. We believe that the principle established in those decisions is controlling here. The Raybestos case involved a consolidation plan wherein two corporations conveyed their assets to a new corporation, which issued shares of its stock directly to the stockholders of the old corporations. The new organization was held liable for a stamp tax, not only on the original issue of stock, but also on the transfer by the old corporations of the right to receive stock issued by the new company in return for their assets. That the new stock was to be issued directly to the old stockholders was considered immaterial.

The court asserts, 296 U.S. at pages 62 and 63, 56 S.Ct. at page 64, 80 L.Ed. 44, 102 A.L.R. 111: "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. * * * It is relinquishment of the ownership for the benefit of another, and the resultant acquisition of it by him which calls the statute into operation." The court concludes its opinion, 296 U.S. at page 64, 56 S.Ct. at page 65, 80 L.Ed. 44, 102 A.L.R. 111: "Here the power to command the disposition of the shares included the right to receive them and the exercise of the power which transferred the right is subject to the tax."

The Hoey decision (Founders General Co. v. Hoey, supra) concerned three instances where stock was issued to a third party at the direction of the person entitled thereto. The court followed the Raybestos case and observed, 300 U.S. at page 275, 57 S.Ct. at page 460, 81 L.Ed. 639: "The legality of the issuance of the stock in the names of the nominees rests on the fact that the taxpayers authorized such issuance and granted their nominees the right to receive the stocks entered in their names. The grant of that authority is a transfer of 'the right to receive' within the meaning of the act; and we are not to look beyond the act for further criteria of taxability."

■ Taxpayer argues that even assuming each of the three items of tax justified, an incorrect evaluation of the stock was relied upon in computing the amounts due. It insists that the findings show the absence of a fixed or market value, and that as a result the stock value was nominal and should not exceed $100. The District Court found the actual value of the new corporation's stock to be $25,000. No claim that a finding is not supported by the evidence can be sustained where, as herein, the evidence is omitted from the record on appeal. In such a case the trial court's findings are presumed to be supported by the evidence, Canal Bank v. Hudson, 111 U.S. 66, 81, 4 S.Ct. 303, 28 L.Ed. 354, and cannot be set aside, Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c.

The District Court's conclusion that its finding of $25,000 as actual value necessitated a reduction in the original subscription tax, forms the basis for taxpayer's contention that the other two items of tax should at most be computed in terms of the same value. The statute does not support the corporation's conclusion. Subdivision (a) of § 1802 of the Internal Revenue Code provides for a tax of 11 cents per share on the *original issue* of no par value shares "unless the *actual value* is less than $100 per share, in which case the tax shall be 3 cents on each $20 of *actual value* * * *." (Emphasis added.) Accordingly the District Court concluded that a tax of $37.50, or 3 cents per each $20 of value, was proper upon its valuation of $25,000.

■ The applicable provision of subdivision (b) of § 1802 does not refer to actual value. It declares instead that "On all sales, * * * or *transfers* of legal title * * * to rights * * * to receive such shares or certificates, * * * where such shares or certificates are without par or face value, the tax shall be 5 cents on the transfer or sale or agreement to sell on *each share* * * *." (Emphasis added.) Griffiths' donation of 22,000 shares to the corporation and the corporation's transfers of stock to Clothier and Sell fall within the scope of subdivision (b). Therein, the number of shares is fixed as the basis on which the tax must be figured. Therefore, the calculation of the tax depends, not on any consideration of actual value, but on the number of shares involved in the transfer.

Affirmed.