(165 App. Div. 640)

WILLIAM P. BONBRIGHT & CO. v. STATE.  (No. 355-84.)

(Supreme Court, Appellate Division, Third Department.  January 6, 1915.)

TAXATION (§ 122*)—EXCISE TAX—TRANSFER OF STOCK—STOCK CERTIFICATE—"LEGAL TITLE."

Tax Law (Consol. Laws, c. 60) § 270, as amended by Laws 1913, c. 779, imposes a tax on all sales, or agreements to sell, or memoranda of sales, of stock, and upon deliveries or transfers of shares or certificates of stock, however made, whether investing the owner with the beneficial interest in or legal title to it. Plaintiff firm organized a corporation to continue its business, which issued all of its stock to the firm in exchange for its business and assets, and after it had sold part of the 100,000 shares of stock issuing receipts for the purchase price, providing for the issuance

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of trustee's certificates to the purchasers, with their consent, entered into an agreement vesting a trust company with legal title to the shares, to issue certificates of interest entitling the purchasers to the beneficial ownership of shares, and surrendered the certificate to the corporation, and issued a new certificate of stock, and delivered it to the trust company, which issued certificates of interest back to the owners. *Held*, that the transfer was taxable; the term "legal title" signifying the naked appearance of title, or a limited title appearing complete on its face as distinguished from a full and complete title.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 221; Dec. Dig. § 122.*

For other definitions, see Words and Phrases, First and Second Series, Legal Title.]

Woodward, J., dissenting.

Appeal from Board of Claims.

Action by William P. Bonbright & Co., a copartnership, against the State of New York. From a judgment or determination of the Board of Claims, awarding a certain sum to claimants, the State appeals. Determination reversed, and claim dismissed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

James A. Parsons, Atty. Gen. (Joseph P. Coughlin, Deputy Atty. Gen., of counsel), for the State.

Hedley V. Cooke, of New York City, for respondent.

HOWARD, J. The claimant respondent herein is a copartnership. I shall speak of it hereafter as the "firm." On December 27, 1912, a corporation bearing practically the same name as the copartnership, and organized to continue practically the same business, was created under the laws of New York. All the stock of the corporation was issued to the old firm, the claimant herein, in exchange for its business and assets. There was preferred stock and common stock. We are concerned only with the common stock. This was issued by the corporation to the firm in one certificate. Prior to March 31, 1913, the firm had sold 28,692 shares of this stock to various purchasers, issuing receipts for the purchase price, which receipts provided for the issuance of "trustee's" certificates to the holders, at a later day. The sale of these shares was subject to certain rights to repurchase, reserved by the firm. The firm remained the owner of 71,308 shares, of which 13,308 shares were held by it for a later sale, subject to the same rights of repurchase. On March 31, 1913, the firm, with the consent of the purchasers of the shares already sold, entered into an agreement with the Banker's Trust Company, by the terms of which the trust company was vested with the legal title to the 100,000 shares for 10 years. The purposes of this trust were to provide for the exercise of the options to repurchase and to secure to the 42,000 shares a certain preference in the payment of dividends. The trust company was required immediately to issue to the beneficial owners of the stock—that is, to the purchasers of the 28,692 shares and to the firm, which owned the remaining 71,308 shares—"certificates of interest."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

All the beneficial ownership of said shares, including the right to vote thereon, was reserved to the holders of the "certificates of interest." At the time of the execution of the agreement, and simultaneously with it, the firm delivered the certificate for the 100,000 shares, with an assignment indorsed thereon, to the trust company. The trust company declined to accept the certificate without stock transfer stamps to the amount of $2,000. Thereupon the firm paid to the trust company under protest $2,000 for the purchase of stamps. The stamps were purchased by the trust company, affixed to the certificate, and canceled. The certificate was surrendered to the corporation, and a new certificate issued to the trust company, which forthwith issued "certificates of interest" back to the owners—28,692 shares to the purchasers, and 71,308 shares to the firm, being the entire 100,000 shares. The firm contends that, in assigning and delivering the 100,-000-share certificate to the trust company, only 28,692 shares—that is to say, those shares which had been sold to purchasers and which it did not own—were subject to the stamp tax, and that the 71,308 shares were exempt from tax.

That is the question to be determined upon this appeal. Under section 280 of the Tax Law, the firm is asking for a return of $1,426.16, the value of the stamps affixed to that portion of the certificate representing the 71,308 shares. If there had been no amendment to section 270 of the Tax Law, there would be no such question here, for the decision in U. S. Radiator Co. v. State of New York, 208 N. Y. 144, 101 N. E. 783, 46 L. R. A. (N. S.) 585, is absolutely determinative upon this question, under the facts presented here, as the statute stood before the amendment. That case held, in effect, that the statute intended to impose a tax only upon a transfer or an agreement to transfer a share of stock, and that any paper or agreement which amounted to less than this was not taxable. Therefore, if it is only upon a transfer of a share of stock that the tax can be imposed, the tax in dispute here was, beyond question, improperly imposed, for the 71,308 shares of stock were not transferred to the trust company, but remained with the claimant and continued to be its property.

For convenience I am inserting here section 270 of the Tax Law as amended; the parentheses indicating the omitted matter and the italics the new matter.

"There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on all sales, or agreements to sell, or memoranda of sales *of stock, and upon any and all* (or) deliveries or transfers of shares or certificates of stock, in any domestic or foreign association, company or corporation, made after the first day of June, nineteen hundred and five, whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of (transfer or) sale *or transfer*, whether (entitling the holder in any manner to the benefit of such stock) *intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock, or merely with the possession or use thereof for any purpose*, or to secure the future payment of money, or the future transfer of any stock, on each hundred dollars of face value or fraction thereof, two cents." Laws 1913, c. 779.

In the case at bar the transaction was *the transfer and delivery of a certificate of stock*. Reading the amended statute literally, this trans-

action is taxable now, under the amendment. But, reading literally, it was also taxable before the amendment; and it was the settled law, before the amendment, that, unless a transfer of a certificate of stock is of such a character as to be also a transfer of the *stock,* the transaction is not taxable. U. S. Radiator Case, supra. So that the amendment must go farther than merely to appear to make the transfer of a certificate of stock taxable, if the effect of the construction in the Radiator Case is to be obviated. It must contain language which signifies that the transfer of a certificate of stock, which does not, in fact, transfer the stock, is also taxable; for in this case the certificate in question, beyond all doubt, did not convey the stock.· It appears to me that the language of the amendment has this significance and meaning. Unless it does have such a meaning, it is difficult to see how the amendment has accomplished anything. The amended statute says that the *transfer of a certificate* of stock, which invests the holder either with the beneficial interest or with the *legal title* to the stock, is taxable. Under the Radiator Case a transfer of a certificate investing the holder ·with the legal title, but not conveying the beneficial interest—that is, the real ownership of the stock itself— was not taxable. The plain language of the amended statute is contrary to the ruling in the Radiator Case, but the statute indicates a purpose, in the most positive and unequivocal words, to tax the transfers of *certificates* (and of course certificates are not shares) of stock, as well as the transfer of *shares* of stock. In other words, the amendment makes the transaction taxable, even though there is no transfer of stock, but only a transfer of the "legal title" to the stock. This amendment to the statute removes the ambiguity in the original enactment, and broadens the law beyond its scope at the time of the decision in the Radiator Case. A transfer of the certificate itself, the mere "scrap of paper," to use a recent famous expression, is made taxable now, as well as a transfer of the share of stock—the intangible right to participate in the dividends and assets of the corporation.

But it is contended by the respondent that the expression "legal title," as used in the amended statute, does not refer to such a title as the trust company took in this case, but embraces all the attributes of complete ownership, namely, control, possession, and enjoyment. It is very apparent that it was not the purpose of the statute to clothe the words "legal title" with any such meaning. The expression "legal title" is frequently used in stock transactions and in other transactions to describe a naked appearance of title, or a limited title appearing complete on its face. It is so used in the agreement in this case. One person may have the legal title—the record title—to land, although the equitable title may be in another. The expression "legal title," as used in the amended statute, must be held to signify the appearance of title, as distinguished from a full and complete title. The statute recognizes that this appearance of title to the stock may be transferred, while the real title, the real ownership, remains in the transferror. Judge Collin, in the Radiator Case, uses the expression "legal title" to define that limited, incomplete title, which, in that case, did not include ownership, or exclusive control, or ·any beneficial interest. He said:

"The four corporations did not transfer the shares owned by them to the trust company. They caused the record title to them to be placed in the trust company temporarily and for an expressed and limited purpose. They remained the owners of the stock. Their ownership was subject to the right of the trust company to vote the shares at corporate elections, but the power to transfer the shares, subject to the right of the trust company to vote them, remained in the corporations. The trust company could not sell, or agree to sell, the shares. It had no assignable interest in them. It had evidence in the certificate that it, as trustee, held the legal title; but this was notice of the existence of the trust agreement which disclosed the ownership of the corporations."

So in this case by the first paragraph of the agreement accompanying the transfer of the certificate in question the Bankers' Trust Company was vested with the legal title, the prima facie title, to the stock, as distinguished from that full, complete, absolute title which the firm held before it made the transfer; but the agreement disclosed that the firm still retained the ownership.

By the plain language of the amended statute, the transfer of the certificate, under these circumstances, is equally taxable as though it had invested the trust company with a "beneficial interest" in the stock. This is the direct letter of the law, and I see no reason why the courts should attempt to twist an opposite meaning out of it.

Therefore it follows that the tax was properly imposed, and that the determination of the Board of Claims should be reversed, and the claim of the claimants dismissed, with costs. All concur, except WOODWARD, J., who dissents.