## FOUNDERS GENERAL CORPORATION v. HOEY, Collector of Internal Revenue. No. 282.

Circuit Court of Appeals, Second Circuit. July 6, 1936.

Seibert & Riggs, of New York City (Royal E. T. Riggs and Murray Taylor, both of New York City, of counsel), for plaintiff-appellant.

Lamar Hardy, U. S. Atty., of New York City (Henderson Mathews, Asst. U. S. Atty., and Richard Delafield, Sp. Asst. to the U. S. Atty., both of New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought to recover from the defendant, as collector of internal revenue, the sum of $4,733.33, and interest, which was a tax alleged to have been collected by him from the plaintiff without lawful authority. On September 10, 1929, the plaintiff, Founders General Corporation, entered into a written agreement with United States Electric Power Corporation to subscribe for 100,000 shares of the common stock of the latter at a price of $13.50 per share, each share to be accompanied by a warrant entitling the holder to subscribe before January 2, 1940, for an additional share at the rate of $25 per share. The 100,000 shares with warrants attached were to be delivered on September 17, 1929. After its subscription, but prior to September 17, 1929, the plaintiff directed the seller to issue the securities in the name of Benton & Co. as its nominee. In accordance with these instructions, the United States Electric Power Corporation caused a certificate for 100,000 shares with warrants attached to be issued in the name of Benton & Co. The power corporation paid the documentary stamp tax upon this issue, and, upon receipt of the amount subscribed for the stock, delivered the securities issued in the name of Benton & Co. to the plaintiff. It is to be observed that under this arrangement there was never any delivery of the certificate to Benton & Co.; but it passed directly from the power corporation to the plaintiff. Benton & Co. is a partnership whose sole business is to have securities belonging to the plaintiff taken and held in its name. Neither that firm nor any of its members has any interest in securities so held. Under a contract with the plaintiff, it receives an annual fee of $1,500 for acting as the latter's nominee.

Some of the shares issued by the power company were thereafter transferred to third parties from the name of Benton & Co., and upon these a stock transfer tax was paid. But, in spite of the payment of the documentary tax on the issue and the transfer tax on those shares transferred from the name of Benton & Co., the Commissioner assessed a stock transfer tax amounting, with penalty and interest, to $4,733.33, upon the alleged transfer of the 100,000 shares of stock from the plaintiff to Benton & Co. This sum the plaintiff paid to the collector and seeks to recover in the present action on the ground that the transaction involved no transfer, and the tax was therefore an unlawful exaction.

In a contract between the Founders General Corporation and the partnership of Benton & Co., it was provided that the latter was appointed agent "for the limited purpose of holding in the firm name stocks, bonds, notes, and other securities and property as agent (other than commission agent or broker) for the account of the Corporation and of otherwise acting with respect thereto in accordance, but only in accordance with the written instructions of the Corporation. * * *" It was also provided that Benton & Co. should have no "beneficial interest" in securities so held, that it waived all right, title, and interest in any securities held or received by it, and that the corporation was appointed the agent and attorney of Benton & Co., with full power to sell, assign, indorse, transfer, and deliver such securities.

The court dismissed the complaint, which set forth the foregoing facts on the ground that it stated no cause of action, and from the judgment of dismissal the present appeal was taken. The question is whether the mere nomination of Benton & Co. as a dummy in whose name the stock was registered subjected the plaintiff to a stock transfer tax under title 8, section 800, of the Revenue Act of 1926 (44 Stat. 99, 101).

This section, so far as applicable, reads as follows:

"Schedule A.—Stamp Taxes. * * *

"3. Capital stock, sales or transfers: On all sales, or agreements to sell, or

memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper, or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share: Provided, That it is not intended by this title to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, nor upon the delivery or transfer for such purpose of certificates so deposited, nor upon mere loans of stock nor upon the return of stock so loaned: Provided further, That the tax shall not be imposed upon deliveries or transfers to a broker for sale, nor upon deliveries or transfers by a broker to a customer for whom and upon whose order he has purchased same, but such deliveries or transfers shall be accompanied by a certificate setting forth the facts."

It is to be observed that the act imposes a tax not only on "transfers of legal title to shares or certificates of stock," but also on transfers of legal title "to rights to subscribe for or to receive such shares or certificates." Judge Goddard, who presided in the District Court, 12 F.Supp. 290, 292, upheld the tax in an opinion that shows how inevitable was the result reached. He said that: "The nomination of Benton & Co. as the person to whom the certificate was to be issued falls within the exact letter of the statute taxing 'transfers of legal title to * * * rights * * * to receive such shares or certificates.' Prior to such nomination the plaintiff had the right to receive the shares, and by its nomination its right was transferred to its nominee. True, the right was conditional upon payment for the shares by the plaintiff, but the statute does not indicate that the right to receive shares must be unconditional at the time when it is transferred in order to constitute a taxable transfer."

In Union Trust Co. v. Heiner, 26 F. (2d) 391, the District Court for the Western District of Pennsylvania held that transfers to mere nominees were not subject to tax. In that case stock was purchased by the plaintiff, and, by his order, was taken in the name of his employee, who had no beneficial interest therein and took the certificate merely for the convenience of the plaintiff in connection with future sales and transfers. The statute involved was section 1100, Schedule A (3) of title 11 of the Revenue Act of 1921 (42 Stat. 303, 304), which, like the act of 1926, imposed a stamp tax upon the transfer of "rights to subscribe for or to receive" certificates of capital stock. The decision went off on the theory that there "was no transfer of any rights in this stock to Kommer," the employee, because "he was the mere employee and agent of the plaintiff, appointed to receive and hold this capital stock for the sole and exclusive benefit of the plaintiff. He had no beneficial interest whatever in the stock." Under the act of 1921, as under the later acts, the tax was imposed upon transfers "whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not." It is plain that the court in Union Trust Co. v. Heiner ignored the express provision that the absence of any beneficial interest on the part of the holder should not exempt the transfer from taxation. The decision, therefore, proceeded on an indefensible theory. That decision has since been followed by various district courts, but we cannot avoid the conclusion that it is contrary to the plain meaning of the statute. Indeed, the provisos in the act of 1926 to the effect that no tax shall be imposed upon an agreement for deposit of certificates for collateral security seem to set the entire limit of all exceptions to the broadly inclusive terms of the act. They can hardly have been inserted merely ex abundanti cautela. The sweeping character of the statute is further indicated by the decisions of the Supreme Court in Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. ——, 102 A.L.R. 111, and Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352. A broad construction of a statute the state of New York, substantially like section 800 of the Revenue Act of 1926, was adopted by the New York courts in Bonbright & Co. v. New York, 165 App.Div. 640, 151 N.Y.S. 35, and Travis v.

Ann Arbor, 180 App.Div. 799, 168 N.Y.S. 53, affirmed 227 N.Y. 640, 126 N.E. 923. Under that statute (Tax Law [Consol. Laws N.Y.] § 270, as amended by laws 1911, c. 352) a stamp tax was imposed upon transfers "whether investing the holder with the beneficial interest in or legal title to * * * stock or merely with the possession or use thereof for any purpose, or to secure the future payment of money, or the future transfer of any stock." It was decided in the Travis Case that a transfer from one nominee to a second, and an indorsement of the certificate by the latter, who made delivery of it on behalf of the true owner, involved two taxable transfers, though in neither event was there any change in the beneficial interest. In Bonbright & Co. v. New York, Howard, J., said:

"The expression 'legal title' is frequently used in stock transactions and in other transactions to describe a naked appearance of title, or a limited title appearing complete on its face. It is so used in the agreement in this case. * * * The expression 'legal title,' as used in the amended statute, must be held to signify the appearance of title, as distinguished from a full and complete title. The statute recognizes that this appearance of title to the stock may be transferred, while the real title, the real ownership, remains in the transferror." 165 App.Div. 640, 644, 645, 151 N.Y.S. 35, 38.

Thus the New York courts sustained a tax upon the theory that there was a transfer to the nominee not merely of possession but of the very title to the shares as the term "title" was used in the statute. We only have to go so far as to hold that there was a disposition of the right to receive.

We do not think that the arrangement whereby the certificate was delivered by the seller directly to the plaintiff avoided the imposition of a tax. There was a transfer to Benton & Co. of the right to receive the stock, and even the certificate was unavailable for use until indorsed by Benton & Co. or by the plaintiff as the agent of the latter under the power of attorney contained in the contract between the parties.

The plaintiff further contends that the decision in Union Trust Company v. Heiner, supra, to the effect that such a transfer as the one now in question is not taxable, should bind the government because Congress by subsequently re-enacting the Stamp Tax Law adopted the construction of the statute promulgated by that decision. But the provisions of the act involve no ambiguity, nor was there any continued acquiescence on the part of the government in the ruling in the Heiner Case, nor has there been a decision by any appellate court so construing the act. Moreover, under an amendment to Schedule A (3) of section 800 of Revenue Act of 1926 by section 723 of the Revenue Act of 1932 (26 U.S.C.A. § 900 note), a new proviso was added to the effect that the tax should not be imposed upon deliveries or transfers from a fiduciary to a nominee of such fiduciary or from one nominee of such fiduciary to another. This amendment can hardly be regarded as futile. It is strongly persuasive of a congressional intent to tax transfers to nominees in all cases other than those specifically excepted under the provisos of the section.

In view of the foregoing, we think it clear that the tax levied in the present case was properly imposed.

Judgment affirmed.