ROLLIN BROWNE et al., Constituting the State Tax Commission, Respondents, *v.* CASE, POMEROY & COMPANY, INC., et al., Appellants.

Argued November 30, 1944; decided December 30, 1944.

*Seth T. Cole, Raymond B. Goodell, Martin Saxe, Roger H. Anderson* and *Lloyd D. Keigwin* for appellants. I. There was no transfer by defendant Gunthert to defendant Case, Pomeroy & Company, Inc., of legal title to, or of any interest whatsoever in, the stock and there is consequently no liability for stock transfer tax. (*People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *U. S. Radiator Co.* v. *State of New York,* 208 N. Y. 144; *Bonbright & Co.* v. *State of New York,* 165 App. Div. 640; *Johnson* v. *Underhill et al.,* 52 N. Y. 203; *International Paper Co.* v. *State of New*

*York*, 210 App. Div. 353, 241 N. Y. 535.) II. The decision in *Travis* v. *Ann Arbor Co.* (227 N. Y. 640) is not controlling. (*Bing* v. *People*, 254 N. Y. 484; *Matter of De Rycke*, 99 App. Div. 596.)

*Nathaniel L. Goldstein*, Attorney-General (*Arthur W. Mattson*, *Wendell P. Brown* and *Marvin P. Lazarus* of counsel), for respondents. I. The indorsement and delivery of the stock transferred title to Case, Pomeroy & Company, Inc. (*Travis* v. *Ann Arbor Co.*, 180 App. Div. 799, 227 N. Y. 640; *Bonbright & Co.* v. *State of New York*, 165 App. Div. 640; *McNeil* v. *The Tenth National Bank*, 46 N. Y. 325; *N. Y. & N. H. R. R. Co.* v. *Schuyler et al.*, 34 N. Y. 30.) II. Title passed when the stock was indorsed in blank and delivered to Case, Pomeroy & Company, Inc., by the nominee. (*Disconto-Gesellschalft* v. *U. S. Steel Co.*, 267 U. S. 22; *McNeil* v. *The Tenth National Bank*, 46 N. Y. 325; Personal Property Law, § 162 (a); *United States* v. *Lawrence Stern & Co. et al.*, 89 F. 2d 485; *Founders General Corporation* v. *Hoey*, 84 F. 2d 976, 300 U. S. 268; *Raybestos-Manhattan Co.* v. *U. S.*, 296 U. S. 60; *Loeb* v. *State of New York*, 176 Misc. 970; *Champney* v. *Blanchard*, 39 N. Y. 111; *Matter of Mills*, 172 App. Div. 530; *Southern Carbon Co.* v. *State of New York*, 171 Misc. 566, 258 App. Div. 1004.) III. The transaction involved herein is taxable. (*Travis* v. *Ann Arbor Co.*, 180 App. Div. 799, 227 N. Y. 640.)

THACHER, J. This is an appeal by the defendant Case, Pomeroy & Company, Inc. (hereinafter referred to as Case, Pomeroy), dealers in securities, and the defendant John C. Gunthert, an employee of Case, Pomeroy, from the unanimous judgment of the Appellate Division, third department, entered upon the submission of a controversy on an agreed statement of facts, in favor of the plaintiffs and against defendants, for thirty dollars, the amount of a transfer tax claimed by the plaintiffs to be due upon the transaction which is recited in the agreed statement of facts. The opinion of the Appellate Division held that the tax was payable pursuant to the provisions of section 270 of the Tax Law as it read on July 15, 1935, the date of the transaction in question. The agreed statement of facts discloses:

In the course of its business, Case, Pomeroy from time to time purchased or subscribed for stocks and sold stocks for its own account, and it was the common practice to cause the stocks

which it acquired to be issued in, or transferred of record into, the name of its nominee so that the stock should be available for delivery in form not open to objection by any purchaser or transferee. Under the rules of the New York Stock Exchange stock recorded in the name of a corporation must be accompanied by papers sufficient to show the evidence of authority of the corporate officers assigning the stock; hence the practice of carrying securities in " street " names.

The defendant John C. Gunthert was used by Case, Pomeroy as one of its nominees for this purpose, and at the time of the transactions hereafter referred to Case, Pomeroy held in its possession detached stock powers in standard form which had theretofore been duly executed in blank by the defendant Gunthert for the purpose of attachment to any certificate for stock that might be acquired by Case, Pomeroy and issued in or transferred of record into the name of Gunthert.

On July 11, 1935, Case, Pomeroy bought at its New York office through New York brokers 1,000 shares of Texas Pacific Coal & Oil Company common stock for its own account for delivery under the rules of the New York Stock Exchange on July 12, 1935, and on that day received delivery of ten certificates for 100 shares each of Texas Pacific Coal & Oil Company common stock indorsed in blank. These certificates were received by one of its clerks other than the defendant Gunthert, who stamped Gunthert's name in the blank assignment on the back of the certificates, made a record thereof in Case, Pomeroy's office and sent the certificates to the transfer agent of the Texas Pacific Coal & Oil Company for transfer into the name of John C. Gunthert. It is agreed that the tax upon said transfer was duly paid by the seller, and under the terms of the submission we are not concerned with the transfer into Gunthert's name.

Thereafter, on July 15th, Case, Pomeroy received from the transfer agent ten certificates for common stock of Texas Pacific Coal & Oil Company for 100 shares each in the name of the defendant John C. Gunthert, representing the shares transferred as aforesaid. These certificates were received by a clerk of Case, Pomeroy who entered upon the blotter the numbers of the certificates so received, noted their receipt from the transfer agent, filled in on a blank form of declaration the number of

shares represented by each certificate and the certificate numbers and immediately procured from the defendant Gunthert his signature upon the declaration and upon the form of assignment on the back of each certificate, so that the certificates could be delivered by Case, Pomeroy to any purchaser or transferee in a form not open to objection without the use of the detached stock powers which had already been executed in blank by Gunthert as nominee before the purchase was made. The declaration thus executed by Gunthert declares that the certificates were not purchased with funds belonging to him; that they were not his property either directly or indirectly, were subject to the control of Case, Pomeroy and had been assigned and delivered to it prior to the execution of the declaration. It further declared that he never had had and did not then have any personal or beneficial interest in the stock and that the dividends thereon or the rights in respect thereof, if any, as well as any proceeds arising from the sale thereof, did not in any manner belong to him but were subject to the order and control of Case, Pomeroy. No transfer tax was paid because of these acts of John C. Gunthert.

Thereafter on July 15, 1935, the certificates so indorsed were placed in the safe deposit box of Case, Pomeroy, where they remained until September 30, 1935, at which time the 1,000 shares of stock were sold by Case, Pomeroy and said certificates were delivered to the purchaser's broker. Upon this sale the full amount of stock transfer taxes was paid by Case, Pomeroy.

The signing of the detached powers and the declaration and the indorsement of the certificates by Gunthert were all in accordance with the established practice, pursuant to which the stock of the Texas Pacific Coal & Oil Company would in ordinary course be transferred into the name of Gunthert, and were in accordance with a pre-existing arrangement between Case, Pomeroy and Gunthert that the recording of such certificates in Gunthert's name should confer no rights whatsoever upon him with respect to such certificates or the stock represented thereby.

A tax upon the transfer into the name of Gunthert having been fully paid by the seller and a second tax upon the sale and delivery of the certificates in September having been paid, this

controversy relates only to the claim of the plaintiffs that an additional transfer tax is required to be paid because of the acts of Gunthert in executing the declaration disclaiming any interest in the certificates and in executing the assignment on the back of each certificate.

In *Travis* v. *Ann Arbor Co.* (180 App. Div. 799, affd. without opinion 227 N. Y. 640), the defendant became the owner of more than 50,000 shares of the capital stock of the Ann Arbor Railroad Company, the certificate for these shares having been issued in the name of its nominee, by whom it had been indorsed in blank. This nominee having removed from the State the defendant directed the transfer agent of the stock of the Railroad Company to cancel the certificate and issue a new certificate in the name of another nominee, who immediately indorsed the new certificate in blank and left it with the transfer agent, where it remained subject to the order of the defendant. This nominee gave no consideration for the certificate and assumed to exercise no rights over it except as directed by the board of directors of the defendant, and there was in fact no change in the beneficial ownership of the shares represented by the certificate since the original acquisition thereof by the defendant. No tax was paid upon the cancelation of the certificate standing in the name of the original nominee and the issuance of the new certificate in the name of the subsequent nominee or upon his indorsement thereof in blank. In the Appellate Division it was held that when the defendant caused the certificate of stock owned by it to be canceled and a new certificate of stock to be issued in the name of the second nominee, it thereby caused the legal title to the stock to be transferred to him; and when he indorsed the certificate of stock in blank and left it with the trust company for the defendant, he transferred the legal title to the stock to whomsoever might be the holder thereof. Accordingly judgment was directed in favor of the plaintiff for the amount of the tax.

Counsel for the appellants attempt to distinguish the facts in the *Travis* case (*supra*) from the facts in the case at bar, contending that all that Gunthert ever had was so-called " appearance of title " on the books of the corporation (*Bonbright & Co.* v. *State of New York*, 165 App. Div. 640, 645), pointing out that the notable fact in this case is that this mere

appearance of title continued in Gunthert until the stock was later sold by Case, Pomeroy, and that the irrevocable stock powers, executed in blank by Gunthert before Case, Pomeroy acquired the shares, *eo instante* upon the transfer of the stock into the name of Gunthert gave Case, Pomeroy every title and right which might otherwise have been transferred, as in the *Travis* case, by the subsequent indorsement of the certificates in blank by Gunthert. That indorsement in this case, it is contended, did not enlarge by one iota the title or rights of Case, Pomeroy with respect to the shares or the certificates; it did not, it is contended, transfer to Case, Pomeroy any beneficial interest or any right to possession or use or any legal title or appearance of title which Case, Pomeroy did not already have.

In the *Travis* case the second nominee was invested with no beneficial interest and never had possession or use of the certificates, but the legal title was transferred to him and from him by the acts upon which each of two taxes was imposed, for there was a transfer to the second nominee on the books of an unqualified title which was qualified by his later assignment in blank. But in this case the agreed statement of facts eliminates from our consideration the " transfer of the stock * * * into the name of John C. Gunthert " and recites, " the tax upon said transfer having been duly paid by the seller." Perhaps the transfer of the record title into the name of the nominee could have been taxed, in addition to the transfer from the seller by delivery of certificates indorsed in blank to Case, Pomeroy, but as we read the submission, that question is not here and to sustain the tax we must hold that the mere signature of the assignment upon the back of the certificate and the declaration signed by the nominee resulted in a taxable transfer.

The following words of section 270 of the Tax Law are controlling: " 1. There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on * * * all deliveries or transfers of shares or certificates of stock * * * whether made upon * * * *and whether investing the holder with the beneficial interest in or legal title to said stock, or other certificates taxable hereunder, or merely with the possession or use thereof* for any purpose, or to secure the future payment of money, or the future transfer of any such stock, or certificates * * * [of] one

and one-half cents for each and every share * * * ." (Emphasis supplied.) The transfer must be characterized by one of these named alternatives. It must invest the transferee with a beneficial interest or with legal title or at least with possession or use for some purpose, unless it is made to secure the future payment of money or the future transfer of stock or certificates. The declaration and the assignment obviously were not made to secure the payment of money or the transfer of anything. In fact they transferred no beneficial interest, for the corporation owned all such interest, nor any possession or use and left the legal title precisely where it was before the documents were executed.

The judgment should be reversed and judgment directed for the defendants as prayed for in the submission, with costs in this court.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment accordingly.