**NEE v. UNITED FUNDS, Inc.**

No. 13654.

Circuit Court of Appeals, Eighth Circuit.

July 27, 1948.

Rehearing Denied Aug. 18, 1948.

Writ of Certiorari Denied Nov. 22, 1948.

See 69 S.Ct. 167.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key and Lee A. Jackson, Sp. Assts. to the Atty. Gen., and Sam M. Wear, U. S. Atty. and Richard H. Musser, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellant.

Cornelius Roach, of Kansas City, Mo. (Daniel L. Brenner and Wilfred Wimmell, both of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellee, United Funds, Inc., hereinafter referred to as the taxpayer, is a registered management open-end investment company, subject to the provisions of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—1 et seq. It is incorporated under the laws of Delaware and maintains its principal place of business in Kansas City, Missouri. It brought this action against the United States Collector of Internal Revenue for the Sixth District of Missouri to recover the sum of $5,849.95 paid as documentary stamp taxes for the period from November 12, 1940, to June 5, 1944, with interest. From a judgment in favor of the taxpayer entered in a trial before the District Court without a jury, the Collector appeals.

The facts pertinent to decision of the questions of law raised on this appeal are undisputed.

By its articles of incorporation the taxpayer is authorized to "subscribe for, purchase, invest in, or otherwise acquire, own,

hold, sell, negotiate, possess, exchange, transfer or otherwise dispose of and deal in and with shares of capital stock" and other securities of any and every kind and nature whatsoever, as fully and to the same extent as natural persons might or could do; "To enter into, execute, make and perform, trust agreements, indentures or other contracts of every kind, from time to time, for the purpose of depositing its cash, securities and other property in trust with one or more banks or trust companies, organized under the laws of the United States of America, or any state thereof * * * and at any time to amend and/or terminate any such trust agreements, indentures or other contracts * * *."

The articles of incorporation provided also that: "All cash and securities owned by the corporation from time to time shall be placed in trust- under the terms of an agreement or agreements approved by the Board of Directors and shareholders of the corporation with one or more banks or. trust companies organized under the laws of the United States of America or under the laws of any state thereof, and having the capital, surplus and undivided profits aggregating not less than Two Million ($2,000,000) Dollars, if such bank or trust company have the necessary trust powers and are able to act upon reasonable and customary terms."

Pursuant to the last quoted provision of its articles of incorporation the taxpayer on October 14, 1940, entered into an agreement with the Commerce Trust Company, in which the Commerce Trust Company is referred to as trustee, providing in part as follows: "Section 1.01. Simultaneously with the execution hereof the Corporation has deposited with the Trustee $32,-000.00 in cash and has delivered to the Trustee certificates representing shares of the Capital Stock of the Corporation. * * *

* * * * * *

"Section 2.10. At any time, and from time to time, the Corporation may direct the Trustee to use any cash then held by the Trustee with respect to the shares of stock of the Corporation of any class, for the purchase of any securities of the cor-

porations and/or securities included on the approved list with respect to such class, within the limitations herein provided. Whenever the Corporation shall hereafter purchase or direct the Trustee to purchase any securities the Corporation shall furnish to the Trustee an Officers' Certificate specifying (a) the securities so purchased or to be purchased, (b) the class of stock of the Corporation, the assets appertaining to which are to be used to pay for the same, (c) the amount to be paid therefor, (d) the person or persons to whom such amount is to be paid, and (e) that the securities are those of corporations and/or securities then included on the approved lists with respect to the class of Capital Stock for which it is being purchased, and the purchase thereof is in accord with the limitations set forth in the Articles of Incorporation or any amendment thereto. Upon receipt of such Officers' Certificate, the Trustee shall pay the amount set forth in such Officers' Certificate to be paid for securities so purchased or to be purchased, certified as aforesaid, to the person or persons specified in the aforesaid Officers' Certificate against delivery to the Trustee of such securities * * * and shall charge the amount of such payment against the Deposited Property appertaining to the class of Capital Stock of the Corporation so specified."

The contract between taxpayer and the Commerce Trust Company also contained the following provision: "Section 2.03. Certificates of stock and/or other securities may be registered in the name or names of the Trustee's nominee or nominees * * *."

The taxpayer had a contract with United Funds Research Corporation under which the Research Corporation acted as an investment adviser as to all investments of the taxpayer's funds. When the Research Corporation decided upon the purchase of certain securities for the account of taxpayer, it placed an order with one of the brokers with whom the taxpayer dealt and delivered to the taxpayer a form giving notice of the purchase of the particular securities. The taxpayer then ex-

ecuted an Officers' Certificate, as described in its contract with the Commerce Trust Company, directing the Trust Company to pay for the securities with funds of taxpayer on deposit with it, through a designated broker, at a designated price, on delivery of the securities. The orders for the purchase of securities were placed in the name of the taxpayer.

All the securities purchased by the taxpayer were purchased in accordance with the plan outlined above, and were, as authorized by the contract between the taxpayer and the Commerce Trust Company, transferred by the seller directly to one Margaret Gaffney, the registered nominee of the Commerce Trust Company, and delivered to the Commerce Trust Company. At the time of each purchase documentary stamps were affixed to the securities by the respective sellers. The tax involved in this action is in addition to the documentary stamp taxes on the transfers from the sellers of the securities, and was assessed upon the alleged transfer by the taxpayer to the Commerce Trust Company or to its nominee of the taxpayer's right to receive the securities purchased on its order, in its name, and paid for with its funds.

The assessment of tax was made upon the ground that the taxpayer, having purchased the securities, had thereby acquired the right to receive them, and that, by directing their transfer and delivery to another, taxpayer transferred its right to receive the securities, and that such transfers were subject to tax under the provisions of the Internal Revenue Code, §§ 1800–1802,[1] 53 Stat. 195–197, 26 U.S.C.A.Int.Rev.Code, §§ 1800–1802.

On these facts the District Judge held: (1) that the taxpayer had no right to receive the securities upon the transfer of which right the tax was imposed, and (2) that, in any event, the transfers by the taxpayer of the right to receive the securities purchased in the manner stated above, if there were such transfers, on the facts of this case, were within the exemption provided by section 1802(b) of the Internal Revenue Code, because such transfers were from the owner to a mere custodian. Neither conclusion of the court can be sustained on the facts in this record.

Since the decisions in Raybestos-Manhattan Company v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, and Founders General Corporation v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, the taxability of transfers of rights to receive securities within the Act is no longer open to question. At the time of the decisions mentioned, the applicable statute was section 800 of the Revenue Act of 1926 which, in respect to the question now under discussion, is identical with section 1802(b) of the Internal Revenue Code. In the Raybestos case two corporations conveyed their property to a new corporation in return for shares of the capital stock of the new corporation, which by agreement of the parties were issued directly to the shareholders of the two old corporations. The court held that the transaction was subject to the stamp tax upon the original issue of the shares of the new corporation, and also upon the transfers of the rights to receive these shares from the two old corporations to their shareholders. "The stock transfer tax is a revenue measure exclusively. Its

---

[1] Section 1800 imposes the tax "for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive."

Section 1801 prescribes the rate of tax imposed on the issue of corporate securities.

Section 1802(a) prescribes the tax payable on the original issue "of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization".

Section 1802(b) prescribes the rate of the tax "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale."

Certain exemptions from taxation granted in section 1802(b) are set out in the opinion.

language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another." 296 U.S. 62, 56 S.Ct. 64. Pointing out that on the facts stated the source of the right to receive the newly issued shares was the conveyance to the new corporation of the property of each of the old corporations and that these shares could not be lawfully issued to any other than the old corporations without their consent, and that by the agreement between the parties this consent or direction was given, the court said, 296 U.S. at page 63, 56 S.Ct. at page 65: "We think that this effective disposition of the right to receive the stock involved a taxable transfer * * *. The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements."

The Founders General case, supra [300 U.S. 268, 57 S.Ct. 458], presented the question: "When, at the instance of one entitled to receive stock, the certificates therefor are, at his request and for his convenience, issued by the corporation in the name of a nominee who receives no beneficial interest therein, does the transaction involve a transfer by the beneficial owner requiring a documentary stamp pursuant to section 800, Schedule A(3), of the Revenue Act of 1926?" The opinion disposed of three cases. In each case the challenged tax was that imposed upon the alleged transfer by the taxpayer, who had purchased the securities involved, of his right to receive the securities purchased, the transfer from the taxpayer of such right in each case being made to the nominee of the taxpayer who received by the transfer no beneficial interest in the securities transferred. Answering the question stated in the affirmative, and sustaining the imposition of tax, the court said, 300 U.S. at pages 274, 275, 57 S.Ct. at page 460:

"* * * The tax is exacted because the taxpayer transferred 'the right to receive' the certificate. * * * The legal title to the shares was received by the nominee from the newly formed corporation; but the authorization rendering his holding lawful was received from the taxpayer. The

legality of the issuance of the stock in the names of the nominees rests on the fact that the taxpayers authorized such issuance and granted their nominees the right to receive the stocks entered in their names. The grant of that authority is a transfer of 'the right to receive' within the meaning of the act; and we are not to look beyond the act for further criteria of taxability. * * * *"

Applying these cases to the facts in the present case, it seems clear beyond question that the taxpayer in this case transferred to the Commerce Trust Company or its nominee the right to receive the securities purchased by it. The contention of the taxpayer that it never had the right to receive the securities because of the provisions of its articles of incorporation and of section 80a—17(f) of the Investment Company Act of 1940 will not stand analysis. The section of the Act relied on is: "Every registered management company shall place and maintain its securities and similar investments in the custody of (1) a bank having the qualifications prescribed in paragraph (1) of section 80a—26(a) for the trustees of unit investment trusts; or (2) a company which is a member of a national securities exchange * * * subject to such rules and regulations as the Commission may from time to time prescribe for the protection of investors; or (3) such registered company, but only in accordance with such rules and regulations or orders as the Commission may from time to time prescribe for the protection of investors. * * * *"

The argument is that the taxpayer never had the right to receive the securities purchased on its order and paid for out of its funds, and therefore never transferred the right to receive them to the Commerce Trust Company, because section 80a—17(f) of the Act and the taxpayer's articles of incorporation required the taxpayer to place and maintain its securities in the custody of a bank having the qualifications set out in the Act, and because the taxpayer's articles of incorporation provide for the execution by taxpayer of contracts for the required deposits of securities with qualified banks and such a contract was in fact executed by the taxpayer and the Commerce

Trust Company, and the purchased securities were in each instance delivered to the Trust Company directly from the seller in compliance with the requirements of the law and of the articles of incorporation and in conformity with taxpayer's contract with the bank.

The answer to this contention is that nothing in the Act or in the articles of incorporation or in the contract executed in compliance with it deprives the taxpayer of the right to exercise the very purpose for which it was organized, that is to say, the right to acquire, receive, and hold, and to transfer the securities in which it was authorized to deal for the benefit of its certificate holders. The articles of incorporation and section 80a—17(f) merely provide for the safe custody of the securities which the taxpayer was organized to purchase and to hold, and for their delivery to a custodian. The taxpayer did not surrender its right to receive the securities in which its funds were invested by its contract with the Commerce Trust Company, nor was it divested of that right by anything in section 80a—17(f). When its agents made a purchase of securities and the taxpayer directed the Commerce Trust Company to pay for the securities purchased on delivery to it, its standing order to that effect in its contract with the Commerce Trust Company came into operation and effected a transfer of the right reserved to the taxpayer to receive the securities purchased.

The remaining question is whether the transfers of the right to receive the securities were, under the facts of this case, exempt from tax under the provisions of section 1802(b) exempting transfers from an owner to a custodian or from a custodian to its registered nominee. The exemption was granted by amendments of the revenue act after the Raybestos case and the Founders General case, supra, were decided by the Supreme Court.

The language of section 1802(b) granting the exemption claimed is that:

"The tax shall not be imposed upon deliveries or transfers of shares or certificates—

"(1) From the owner to a custodian if under a written agreement between the parties the shares or certificates are to be held or disposed of by such custodian for, and subject at all times to the instructions of, the owner; or from such custodian to such owner;

"(2) From such custodian to a registered nominee of such custodian, or from one such nominee to another such nominee, if in either case the shares or certificates continue to be held by such nominee for the same purpose for which they would be held if retained by such custodian; or from such nominee to such custodian.

"No exemption shall be granted under this paragraph unless the deliveries or transfers are accompanied by a certificate setting forth such facts as the Commissioner, with the approval of the Secretary, may by regulation prescribe as necessary for the evidencing of the right to such exemption. No delivery or transfer to a nominee shall be exempt under this paragraph unless such nominee, in accordance with regulations prescribed by the Commissioner, with the approval of the Secretary, is registered with the Commissioner."

Section 1802(b) imposes the tax "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates." Plainly, the exemption of transfers of shares or certificates subject to the tax, or of transfers of the right to receive such shares or certificates, is granted only when the transfers are accompanied by the required certificate, setting forth such facts as the Commissioner may, by regulation, prescribe as necessary to evidence the right to the exemption claimed.

It is admitted that the Commerce Trust Company, although referred to as a trustee in the contract between it and the taxpayer, was a mere custodian of the securities of the taxpayer, and that the transfer of the right to receive the securities from the taxpayer to the Commerce Trust Company or its nominee was not in any case accompanied by a certificate as required by the Act. Neither the Commerce Trust Company nor its nominee had

any beneficial interest in the securities. Both were at all times subject in respect of them to the control and direction of the taxpayer, the registered nominee of the Trust Company holding the naked legal title to the securities transferred by the sellers.

The applicable Treasury Regulations (Treasury Regulations 71, 1941 Edition, Subpart D) follow the language of the statute. Paragraph 113.30 of Subpart D recites that section 1802(b) imposes a tax on sales, or agreements to sell, or memoranda of sales, of stock; "on deliveries of stock with intent to pass title; on transfers of legal title to stock; on transfers of rights to subscribe for stock; and on transfers of rights to receive stock." Section 113.31 provides that: "As used hereinafter in this subpart, the term 'stock' includes any of the shares or certificates mentioned in section 1802(a) and rights to subscribe for or to receive such shares or certificates * * *."

Section 113.35 · deals with exemptions provided in section 1802(b), and provides in paragraph (f) that:

"The tax does not apply to the delivery or transfer of stock from the owner thereof to a custodian, if under a written agreement between the owner and the custodian, the stock so delivered or transferred is to be held or disposed of by such custodian for, and subject at all times to the instructions of, the owner; or to the delivery or transfer of stock from such custodian to such owner.

"The tax also does not apply to the delivery or transfer from such custodian to a registered nominee of such custodian, or from the owner direct to such registered nominee, or from one such nominee to another such nominee, if the stock continues to be held by the nominee for the same purpose for which it would be held if retained by such custodian; or from such nominee to such custodian or the owner. No exemption is granted unless the nominee is registered in the manner provided in section 113.153.

\* \* \* \* \* \*

"The exemption specified in this subsection shall not be granted in any case unless the delivery or transfer is accompanied by a statement, signed by the custodian, in substantially the following form:

" 'It is hereby certified that the transfer of the attached shares is exempt from the transfer tax under the provisions of section 1802(b) of the Internal Revenue Code, and that evidence in proof of the exemption is maintained by us and is available for inspection by internal revenue officers.

.............................

" 'Signature of Custodian.' "

The Treasury Regulations neither add to nor take anything from the provisions of the Act. The fact that the suggested form of the certificate contained the provision that it be "attached" to the "shares" transferred is of no significance in view of the plain provisions of the Act and regulations requiring as requisite to the exemption that the certificate shall accompany the transfer of the right to receive shares or the delivery of shares with the intent to pass title. The transfer of the right to receive the shares in this case was evidenced by the contract between the taxpayer and the Commerce Trust Company, and by the directions issued by the taxpayer to the Commerce Trust Company to pay for the shares from the taxpayer's funds, when delivered. The regulations do not require anything more than the certificate in substantially the form suggested. In this case the custodian or the taxpayer was at liberty to provide a certificate more in keeping with the transfer of the right to receive shares, or to use the certificate suggested and attach it to the shares when received.

■ In considering taxpayer's claim for exemption, it must be borne in mind that the Act is a revenue measure imposing the tax on every transfer of the right to become a shareholder of a corporation or to receive a certificate of any interest in its property. Raybestos-Manhattan Company v. United States, supra. The reach of the Act may not be restricted by technical refinements in construction. Central States Life Insurance Company v. Sheehan, 8 Cir., 117 F.2d 46. The taxpayer's claim here is for an exemption from the tax imposed by a revenue act on all transfers of rights to subscribe for or receive

shares or certificates or other securities subject to the act. "It has been said many times that provisions granting special tax exemptions are to be strictly construed." Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29; Harding Glass Company v. Commissioner, 8 Cir., 142 F.2d 41, 44; Valentine-Clark Corporation v. Commissioner, 8 Cir., 137 F.2d 481, 483; United States v. Dakota Tractor and Equipment Company, 8 Cir., 125 F.2d 20, 21. We conclude that the transfers of the taxpayer's right to receive the securities involved in this case were not exempt from taxation unless accompanied by the required certificate.

The judgment of the District Court is reversed with directions to dismiss the complaint.

