**SELECTED AMERICAN SHARES, Inc. v. UNITED STATES.**

No. 10496.

United States Court of Appeals
Seventh Circuit.

April 30, 1952.

Rehearing Denied May 22, 1952.

Duffy, Circuit Judge, dissented.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Ellis N. Slack, Acting Asst. Atty. Gen., Carolyn R. Just, U. S. Department of Justice, Washington, D. C., A. F. Prescott, Virginia H. Adams, Special Assts. to the Atty. Gen., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for appellant.

Arnold R. Baar, Anan Raymond, Gilbert H. Hennessey, Jr., all of Chicago, Ill. (Kix-Miller, Baar & Morris and Johnston, Thompson, Raymond & Mayer, all of Chicago, Ill., of counsel), for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit to recover additional stamp taxes assessed against it, paid under protest, having resulted in judgment for plaintiff, the government appeals. The facts were stipulated; the only controversy is as to their proper construction and the conclusions of law to be drawn therefrom.

Plaintiff is a diversified management investment company which buys and sells, for investment purposes, shares of corporate capital stock, bonds and similar securities. In accord with its charter and by-laws and certain statutes and regulations intended to protect the interests of stockholders of such corporations, plaintiff deposits physically all its securities with the Manufacturers Trust Company for safe-keeping. It does not purchase shares in its own name but directs its broker to buy them for it in the name of Porter & Company, a copartnership consisting of employees of its managing agents, as its nominee. This practice is utilized in order to make transfers of its securities less complicated than they would be if plaintiff had the certificates registered in its name. Thus, any member of the copartnership can, with his signature guaranteed by plaintiff, assign a certificate of stock without further formality, whereas if the security should be issued directly to the plaintiff corporation, any assignment executed by its duly authorized officer would have to be accompanied by satisfactory documentary evidence of the authority of the signatory. It is undisputed that the sole purpose of buying in the name of a nominee is to promote the convenience of plaintiff. Thus Porter & Company becomes a mere conduit; it buys securities for plaintiff through brokers, not in plaintiff's name but in its own name, although is has no beneficial interest in the securities. When the broker receives the stock in Porter's name, obviously a transfer has been made and a tax becomes due, which in this case has been paid and is not now in controversy.

The broker, having secured the certificate of stock in the name of Porter & Company, receives from plaintiff a blank assignment signed by the nominee, authorizing transfer to any other person. Under his instructions from plaintiff, the broker thereupon delivers the certificate, accompanied, by the assignment, to the Manufacturers Trust Company, who takes and holds the security for plaintiff, and pays the broker therefor from plaintiff's funds kept by it for that purpose. All securities remain with the custodian until plaintiff determines to sell them, whereupon the trust company, at plaintiff's instructions, delivers the stock certificate and the blank assignment to the vendee.

As we have said, plaintiff admittedly owed and paid the stamp taxes due and payable because of the original transfer to Porter & Company. The commissioner assessed an additional stamp tax on the theory that plaintiff, by directing the broker to issue the security to Porter, instead of having it issued to itself, as it was entitled to have done, as beneficial owner, by virtue of having furnished the consideration therefor, had thereby effectuated a transfer to its nominee of its right to receive the stock, and that issuance of the stock to Porter & Company, in pursuance of this direction from plaintiff, constituted a transfer of the right to receive the stock from plaintiff to Porter. A second additional stamp tax was assessed upon the theory that when the broker took the certificate issued to Porter, accompanied by the latter's blank assignment, to the custodian, there was thereby effectuated a transfer of the right to receive the stock from the nominee to the custodian. As we shall see later, the correct theory in this respect, we think, is that the last mentioned transfer is not to the custodian, who merely receives the physical possession of the security but, in fact and law, a retransfer of the shares from the nominee to plaintiff, inasmuch as the custodian is merely the alter ego of plaintiff and receives no legal title.

The District Court did not accede to either theory. It concluded, upon the facts presented, that Porter & Company did not receive and had no right to receive any securities registered in its name; that, inasmuch as no certificates were physically delivered to Porter & Company and as the latter made assignments in blank and delivered them with the certificates to plaintiff, without gaining possession of the shares, actual legal title was never transferred to it and no taxable transfer to it occurred. The court further concluded that, inasmuch as the trust company had no right, title or interest in any of plaintiff's securities except to safe-keep them, the delivery to it did not constitute a transfer within the statute. The government challenges the correctness of each of these conclusions.

Section 1802(b) of the Internal Revenue Code, 26 U.S.C. § 1802, imposes a stamp tax "On all * * * deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to . * * * receive such shares or certificates". Under it a taxable transfer has been effected whenever "made upon or shown by the books of the corporation * * *, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer * * * (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), * * *." Subsection (a) provides for a tax "On each original issue, * * * of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 * * *."

■ The Supreme Court, in Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 64, 80 L.Ed. 44, said: "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. * * * The subject of the tax * * * embraces transfers of rights to subscribe for or receive shares or certificates whether made upon the books of the corporation 'or by any paper, agreement, or memorandum or other evidence of transfer. * * *'" In that case two corporations entering into a consolidation transferred and assigned all their assets to a newly organized company and arranged that the stock in the new corporation to be delivered in consideration of the receipt of the assets of the two consolidating should be issued not to them but to their shareholders. The court held that the rights of the two corporations to receive their shares had been transferred by them to their stockholders and that there-

by they had incurred liability for the tax upon such transfers. The court said: "The new shares could not lawfully be issued to any other than the grantor corporation without its authority, * * *. The consolidation agreement * * * made disposition to the stockholders of the two corporations of the correlative right to receive the stock." The logic of the case is evident, and though the facts here are not parallel, the reasoning of the Supreme Court is, we think, controlling in the solution of our problem.

■■ Later, this court, in United States v. A. B. Leach & Co., 7 Cir., 84 F.2d 908, held that a transaction whereby the company caused stock to be issued in the name of one of its employees, as nominee, for convenience in making contemplated sales to the public, did not amount to a taxable transfer from the corporation to the employee. In Founders General Corporation v. Hoey, Collector of Internal Revenue, 84 F.2d 976, the Second Circuit reached a different conclusion. As a result of the conflict between the two decisions and still a third, Automatic Washer Co. v. United States, 15 F.Supp. 70, 83 Ct.Cl 593, decided by the Court of Claims, the Supreme Court granted certiorari in all three cases, disposing of them in Founders General Corp. v. Hoey, Collector of Internal Revenue, 300 U.S. 268, 57 S.Ct. 457, 460, 81 L.Ed. 639. The court held that, by causing the transfer to be made to a nominee instead of to itself, the taxpayer had made a taxable transfer. It pointed out that, though in none of the three cases did the transaction involve the transfer of the beneficial interest, that fact was, in view of the language of the Act, without significance. The tax, said the court, was rightfully assessed because the taxpayer transferred to another the right to receive the certificate. The opinion added that it was without legal significance, also, that, under the power of attorney from the nominee to the beneficial owner, the former had no part in the management or disposal of the securities. "The legal title to the shares was received by the nominee from the * * * corporation; but the authorization rendering his holding lawful was received from the tax-

payer. The legality of the issuance of the stock in the names of the nominees rests on the fact that the taxpayers authorized such issuance and granted their nominees the right to receive the stocks entered in their names. The grant of that authority is a transfer of 'the right to receive' within the meaning of the act; and we are not to look beyond the act for further criteria of taxability. See Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199." This case was held controlling in Nee v. United Funds, 8 Cir., 169 F.2d 33, in a case not greatly at odds in fact with the one before us.

In view of the wide category of transfers within the language of the Act of Congress and the decisions of the Supreme Court giving effect to the statutory provisions, we think it follows conclusively that in each instance the tax here was properly assessed. True, Porter & Company was a mere nominal conduit receiving no beneficial interest but only the naked legal title. But the securities were purchased with the funds of plaintiff, and, in the absence of any other circumstance, plaintiff was entitled to receive in its own name certificates for which it had furnished the purchase money. The shares were in equity its own; it alone had the right to the certificates therefor. But, instead of taking them in its own name, it authorized their issuance to Porter. Thereby it transferred to the latter, the right to have the certificates registered in its name. This was the transfer of a right belonging to the taxpayer similar to the rights transferred by the corporations in the Raybestos-Manhattan case. It matters not that the certificate may never have come into the physical possession of Porter & Company. It is of no significance that at the time the certificates were issued to Porter in its name, or even before then, the latter had executed and delivered to plaintiff powers of attorney authorizing assignment of the certificates. The telling fact remains that the certificates were in fact and in law those of plaintiff and that when it surrendered to another the right to have them in its own name and, instead, directed that they issue to Porter & Company, it made a transfer within the language of the Act of Congress. The legal title passed to Porter & Company by virtue of the issuance of the security to it in its name, at the request of the plaintiff, and that title could be retransferred only by Porter & Company. Plaintiff could not again transfer it until and unless it secured an actual transfer to itself by virtue of the blank assignment of Porter & Company.

We think the same reasoning applies to the redelivery by the broker to plaintiff, i. e., to plaintiff's custodian. We deem the delivery of the certificates accompanied by blank assignments to the trust company not a transfer to the latter but one to plaintiff, for the reason that the custodian held physical possession of the securities merely for safe-keeping for plaintiff. But the transactions did effectuate retransfers to plaintiff and, therefore, were within the Act.

We realize that to hold that where a beneficial owner of shares of stock, i. e., one furnishing the purchase price of stock, directs that the certificate be issued to its bare nominee and that nominee immediately transfers it from itself to the beneficial owner, two taxable transfers have occurred may, on its face, seem unreasonable. But we think Congress' mandate, as interpreted by the Supreme Court, demands the conclusion. Any criticism provoked by it must be made to the lawmakers, not to the courts.

As a matter of fact there are provisions in the statute which provide certain exemptions and exceptions in such cases but they entail certain formalities upon the part of the taxpayer, with which plaintiff admits it has not complied.

The judgment is reversed with directions to enter judgment dismissing the complaint.

DUFFY, Circuit Judge (dissenting).

Porter and Company was a partnership consisting of employees of plaintiff. It was a device used solely for convenience in the transferring of securities. It did not own any assets and did not engage in any other business, and was completely subject to plaintiff's control. In fact it did not have a substantial identity of existence of its own. It was, as the majority opinion points out, merely a conduit.

The Manufacturers Trust Company was merely plaintiff's custodian. It held plaintiff's assets for safe-keeping only, never having title or interest in any of the securities placed in its possession.

Only a single purchase transaction upon which the government has assessed second and third documentary stamp taxes is under our consideration. As plaintiff did not relinquish any interest in its securities or vest title in them in either the nominee or the custodian, I think the decision of the trial court was correct. In spite of the broad language used in Founders General Corp. v. Hoey, Collector of Internal Revenue, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, I would affirm.